# 22-3178(L); 22-3204(con)

# United States Court of Appeals

*for the*

# Second Circuit

———————

UNITED STATES OF AMERICA,

*Appellee,*

- v. -

JERMAINE LIGHTFOOT, STAN JONES, JASON BRANDT, AKA SEALED DEFENDANT 1,

*Defendants,*

DAVID MCCRONE, PEDRO CHINNERY,

*Defendants-Appellants.*

———————

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

———————

BRIEF AND APPENDIX OF
DEFENDANT-APPELLANT
DAVID MCCRONE

———————

Brendan White
WHITE & WHITE
524 East 20th Street, # 6D
New York, NY 10009
(646) 303-0267
hendonbgb@gmail.com

*Attorney for Defendant-Appellant
David McCrone*

# Table of Contents

                                                              Page
Table of Authorities ..................................... ii

Preliminary Statement ..................................... 1

Statement of Subject Matter
 And Appellate Jurisdiction .............................. 3

Statement of Issues Presented for Review ................. 3

Statement of the Case .................................... 4

Statement of Facts ....................................... 5

    The Presentence Report and The Sentencing ............. 5

Summary of Argument ...................................... 10

Argument ................................................. 11

    POINT I

        THE CONDITION OF SUPERVISED RELEASE REQUIRING
        THAT "YOU MUST CONTINUE TO TAKE ANY PRESCRIBED
        MEDICATIONS UNLESS OTHERWISE INSTRUCTED BY THE
        HEALTH CARE PROVIDER" MUST BE STRUCK FROM THE
        SENTENCE, SINCE IT WAS NOT SUPPORTED BY
        PARTICULARIZED FINDINGS OR EXPLANATION IN
        THE RECORD ......................................... 11

            The Relevant Law ................................. 11

            The Imposition of The Standard Condition
            Was Unreasonable Under The Circumstances Here ..... 20

    POINT II

        THE SEARCH CONSENT CONDITION OF SUPERVISED RELEASE
        WITH RESPECT TO COMPUTERS AND OTHER ELECTRONIC
        DEVICES MUST BE VACATED SINCE IT WAS NOT SUPPORTED
        BY AN INDIVIDUALIZED ASSESSMENT THAT IT WAS
        REASONABLY RELATED TO SENTENCING FACTORS, THE
        REASON FOR THE CONDITION WAS NOT EXPLAINED ON
        THE RECORD, AND IN ANY EVENT THE SWEEPING SEARCH
        CONDITION WAS AN OVERBROAD INTRUSION ON MR.
        MCCRONE'S LIBERTY INTERESTS ........................ 27

Conclusion ............................................. 33

## Table of Authorities

<u>Cases</u>

<u>Anders v. California</u>,
386 U.S. 738 (1967) ....................................... 1

<u>Johnson v. United States</u>,
520 U.S. 461, 467 (1997) ................................. 13

<u>Riggins v. United States</u>,
504 U.S. 127 (1992) ...................................... 15

<u>Riley v. California</u>,
573 U.S. 373 (2014) ............................. 29, 31, 33

<u>Sell v. United States</u>,
539 U.S. 166 (2003) ...................................... 15

<u>United States v. Arevalo</u>,
628 F.3d 93 (2d Cir. 2010) ............................... 11

<u>United States v. Arguedas</u>,
134 F.4th 54 (2d Cir. 2025) .............................. 26

<u>United States v. Burden</u>,
860 F.3d 45 (2d Cir. 2017) ............................... 13

<u>United States v. Franco</u>,
733 Fed. Appx. 13 (2d Cir. 2020) ..................... 12, 13

<u>United States v. Johnson</u>,
567 F.3d 40 (2009) ....................................... 13

<u>United States v. Kunz</u>,
68 F.4th 748 (2d Cir. 2023) ...................... 14, 23, 27

<u>United States v. Malone</u>,
937 F.3d 1325 (10th Cir. 2019) ....... 16, 17, 19, 24, 25, 27

<u>United States v. Morrishow</u>,
2024 WL 4690524 (2d Cir. Nov. 6, 2024) ............... 33, 34

United States v. Myers,
426 F.3d 117 (2d Cir. 2005) ...................... 14, 23, 30

United States v. Oliveras,
96 F.4th 298 (2d Cir. 2024) ............................. 33

United States v. Prado,
53 F.4th 316 (5th Cir. 2022) ................ 16, 17, 19, 27

United States v. Roberson,
2007 WL 10131753 (2d Cir. Feb. 6, 2025) .............. 17, 19

United States v. Robinson,
134 F.4th 104 (2d Cir. 2025) ...................... 27, 28, 29

United States v. Sims,
92 F.4th 115 (2d Cir. 2024) .......... 13, 14, 23, 29, 30, 32

United States v. Williams,
30 F.4th 796 (8th Cir. 2022) ............................ 18

United States v. Williams,
356 F.3d 1045 (9th Cir. 2004) ............... 16, 18, 19, 26

Washington v. Harper,
494 U.S. 210 (1990) ..................................... 15


## Statutes and Guidelines

18 U.S.C. § 3231 ......................................... 3

21 U.S.C. § 841(b)(1)(B) ................................. 1

21 U.S.C. § 846 .......................................... 1

28 U.S.C. § 1291 ......................................... 3

U.S.S.G. § 5D1.3(d) ...................................... 5

**Preliminary Statement**

Pursuant to the Court's Order of November 4, 2024, and Appellant's motion of December 19, 2024, so-ordered on December 26, 2024, this Brief is filed on behalf of Defendant-Appellant David McCrone, to address two discrete questions identified by the Court.

By Judgment of December 5, 2022, Hon. Cathy Seibel, of the United States District Court for the Southern District of New York, sentenced Mr. McCrone to a term of 102 months' imprisonment and five years' supervised release, following his August 4, 2022, plea of guilty to a single count of conspiracy to distribute and possess with the intent to distribute 50 grams and more of mixtures and substances containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). The plea agreement included a waiver of appeal for any sentence of 168 months or less.

After Mr. McCrone timely filed a notice of appeal, Counsel filed a brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), noting among other things the provision of the plea agreement in which Mr. McCrone waived his right to appeal (Doc. No. 90), and consequently filing a motion to be relieved as counsel. (Doc. No. 90) The Government

subsequently moved to dismiss the appeal, citing the same provision. (Doc. No. 106)

In its November 4, 2024, Order, the Court identified the following two special conditions of supervised release as having been imposed without specific findings:

> You shall submit your person, and any property, residence, vehicle, papers, computer, other electronic communication, data storage devices, cloud storage or media, and effects to a search by any United States Probation Officer, and with the assistance of any law enforcement if needed. The search is to be conducted when there is reasonable suspicion concerning violation of a condition of supervision or unlawful conduct by you. Failure to submit to a search may be grounds for revocation of release. You shall warn any other occupants that the premises may be subject to searches pursuant to this condition. Any search shall be conducted at a reasonable time and in a reasonable manner.

> You must participate in an outpatient mental health treatment program approved by the United States Probation Office. You must continue to take any prescribed medications unless otherwise instructed by the health care provider. You must contribute to the cost of services rendered based on your ability to pay and the availability of third-party payments. The Court authorizes the release of available psychological and psychiatric evaluations and reports, including the presentence investigation report, to the health care provider.

(Doc. No. 121; November 4, 2024 Order at 2)

The Court advised counsel to determine whether additional briefing was warranted with respect to those issues, and as noted above, granted by order of December

26, 2024, Counsel's motion to withdraw the previously filed Anders Brief and instead to file a brief addressing the merits of the identified issues.

## Statement of Subject Matter
## and Appellate Jurisdiction

This appeal is from a Judgment of the United States District Court for the Southern District of New York, which had jurisdiction pursuant to 18 U.S.C. § 3231, and which was entered on the docket on December 15, 2022. A notice of appeal was timely filed on December 27, 2022. This Court has jurisdiction of the appeal pursuant to 28 U.S.C. § 1291.

## Statement of Issues Presented for Review

1. Whether the condition of supervised release requiring that "you must continue to take any prescribed medications unless otherwise instructed by the health care provider" must be struck from the sentence, since it was not supported by particularized findings or explanation in the record?

2. Whether the search consent condition of supervised release with respect to computers and other electronic devices must be vacated since it was not supported by an individualized assessment that it was reasonably related to sentencing factors, the reason for the condition was not explained on the record, and in any event the sweeping search condition was an overbroad intrusion on Mr. McCrone's liberty interests?

**Statement of the Case**

The case arose out of an investigation into drug transactions in and around Poughkeepsie, New York, involving Jermaine Lightfoot, Stan Jones, McCrone, and others. According to investigators, Lightfoot obtained methamphetamine and other narcotics from Jones in New Rochelle, New York, and then used couriers to transport them to others, including McCrone, who lived in Broome County, New York.

McCrone was initially arrested on June 28, 2021, pursuant to a complaint, which had been filed on June 25, 2021, alleging narcotics conspiracy. Lightfoot and Jones were also arrested. By indictment filed on July 20, 2021, McCrone, Lightfoot, Jones, Pedro Chinnery, and Jason Brandt were charged with one count each of conspiracy to distribute cocaine and conspiracy to distribute methamphetamine. controlled substances and use of firearms in connection with a drug trafficking crime. McCrone was ordered detained and remained in detention throughout the pendency of the district court proceedings.

On July 5, 2022, McCrone entered a plea of guilty to a lesser included offense of Count Two, specifically charging that he conspired with others to distribute at least 50 grams of methamphetamine. The plea was entered pursuant to

a plea agreement that included a stipulated sentencing guidelines range of 135-168 months' imprisonment. The plea agreement contained a provision that McCrone would waive the right to appeal any sentence of 168 months or less. (A 32; Plea Agreement at 5)

On December 5, 2022, McCrone was sentenced principally to 102 months' imprisonment, below the stipulated sentencing range.

## Statement of Facts

Since this appeal is expressly limited only to the conditions of supervised release, and since the facts have already been presented in in the Anders Brief and in the Government's motion, the facts here relate only to the supervised release component of the case, and are derived from the presentencing report, sentencing transcript, and the other documents filed in the district court.

The Presentence Report and The Sentencing

On December 5, 2023, McCrone was sentenced. At the outset of the proceeding, McCrone confirmed that he and counsel had reviewed and discussed the presentence report, and that they did not object to anything contained in the presentence report. (A 65-66; Sentencing Tr. at 2-3) McCrone stated that he was satisfied with the

representation he had received from his attorney.  (A 66; Sentencing Tr. at 3)  The court adopted the findings of fact contained in the presentence report.  (A 66; Sentencing Tr. at 3)

In requesting a sentence at the bottom or below the guidelines, counsel emphasized that McCrone had suffered an abusive childhood and turned to drugs to cope, and that he had been dealing with drug addiction for most of his life, but that he had quickly accepted responsibility for his actions, and that he earnestly wished to put his criminal life behind him, including through drug treatment and mental health counseling.  (A 67-70; Sentencing Tr. at 4-7)

The court agreed with the guidelines calculation of the parties, and adopted the calculation contained in the presentence report after engaging in its own calculation. (A 71-72; Sentencing Tr. at 8-9) The court noted that he probation department had recommended a below guidelines sentence of 120 months.  (A 75; Sentencing Tr. at 12) Ultimately, the Court imposed a below-guidelines sentence of 102 months, stating the following, in pertinent part:

> The history and characteristics of the defendant cut both ways. Ms. Louis-Jeune has put together a package that describes very well the awful things that happened to Mr. McCrone as a kid. With a mother -- with a father who was gone, a mother who cared more about drinking and partying than raising her son; relatives who

abused drugs and alcohol and were involved in domestic violence and were abusive. Step-fathers and boyfriends who were abusive, a sibling who was abusive; just a chaotic family situation where nobody was looking out for Mr. McCrone's even safety, let alone giving him no love and support and nurturing and guidance that a kid needs. So it is not the least bit surprising that Mr. McCrone at a young age turned to drugs and alcohol.

You know, this description of not only the direct abuse, but the neglect such as the adults in his life letting an infected foot get so bad that he ended up in the hospital for six months. It's pretty Dickensian.

And it does not appear that the defendant's gotten any formal mental health treatment. He's gotten drug treatment, but only when incarcerated. I can't understand why that was not part of parole. But in any event, I agree with Ms. Louis-Jeune that this is an individual who's going to need mental health treatment, perhaps even more than drug treatment because the -- until he deals with those issues, the chances are good he is going to go back to what he's been doing his whole life. (A 73-74; Sentencing Tr. at 10-11)

The court also imposed a five year term of supervised release, with special conditions that McCrone participate in outpatient mental health counseling, that he make his financial records available to probation, and that his residence be subject to a search condition. (A 76-77; Sentencing Tr. at 13-14) Notably, those special conditions included requirements that McCrone continue to take any medication prescribed by a doctor and that he submit to

searches of any computers and electronic storage devices.
(A 76-77; Sentencing Tr. at 13-14)

After the imposition of sentence, the court stated the following with respect to the supervised release component:

> Eight and a half years is a long time. It's not as long as 13 years, and I have gone considerably below the guidelines because of what you endured as a kid and the effect it's had on your life, but now it's up to you to change things; and I think you know that if you don't, you are probably going to end up back in prison and die there because I don't think anybody is going to give you a break the next time.

> You know, if all this sentencing were about is, you know, who had the worst time growing up, and who didn't get the help, and who was failed by the adults in his life, and who really needs help, this would be a much easier job. I also have to consider a whole bunch of other things, including protecting the public against further crimes, which is a big issue here.

> You will get the help this time around, but unfortunately, all too often people get help, and they still revert to their past ways, and that's what I am worried about here and why I didn't feel like I could go any lower, both because of the need to protect the public and the seriousness of the offense. So you will have plenty of time to think about how you are going to try to make things different this time.

> I will tell you federal supervision you will probably find different from parole. The people who are supervising you in the feds really want to help you. They really want you to succeed. They feel like they have failed if they have to bring you back before a judge on a violation, but you have to let them help you, and that means being honest with them even when you screw up. I can't tell you how many people come through here, and they get in trouble because they relapsed,

and instead of just saying, you know what, I relapsed, I need a more intensive program, they lie about it or they get pulled over, and instead of informing their probation officer, they lie about it, and then they are not letting Probation, their probation officer help them, and they end up in a lot more hot water than they otherwise would have been.

So I hope when you get out, and I recognize that's a ways off, but I hope when you get out, you will let them help you. They really do want to help you. The best thing that can happen is you and I never see each other again because that means you got out, and you were able to change. I think that you've taken some big steps already. And that was probably with the help of Dr. Pearson. She got you opening up, and that's going to be a big part of what you need to do.

I don't know why the adults in your life were so awful. It's hard for normal people to fathom who would treat a kid like that or who would look the other way when their kid was being abused. It's just shocking. And it's not too late to change, and I wouldn't have given you the sentence that I did give you if I didn't think you had the ability to change. So I wish you luck. (A 79-81; Sentencing Tr. at 16-18)

McCrone's attorney timely filed a notice of appeal (A 89), and as noted above, an Anders Brief was filed on June 12, 2023. Pursuant to the Court's Order of November 4, 2024, the Anders brief was withdrawn, and this Brief is now being filed, specifically addressing the merits of the issues identified by the Court.

**Summary of Argument**

Although the waiver of the right to appeal contained in the plea agreement foreclosed any appeal with respect to the sentence and the term of supervised release, in imposing two special conditions of supervised release, the district court failed to adhere to the requirement that it conduct an individualized assessment of the circumstances warranting the special conditions, and that it state its reasons in open court. Since those lapses rendered the imposition of those conditions procedurally unreasonable, the special conditions that Mr. McCrone must take any prescribed medication, and that he submit to a search of any computer, other electronic communication, data storage devices, cloud storage or media must be stricken from the judgment.

**Argument**

POINT I

THE CONDITION OF SUPERVISED RELEASE REQUIRING THAT "YOU MUST CONTINUE TO TAKE ANY PRESCRIBED MEDICATIONS UNLESS OTHERWISE INSTRUCTED BY THE HEALTH CARE PROVIDER" MUST BE STRUCK FROM THE SENTENCE, SINCE IT WAS NOT SUPPORTED BY PARTICULARIZED FINDINGS OR EXPLANATION IN THE RECORD.

There was no indication that Mr. McCrone's personal history necessitated the prescription of any medication, psychotropic or otherwise. Moreover, the district court failed to engage in any individualized assessment or otherwise provide an on-the-record rationale for imposing as a special condition of supervised release a requirement that Mr. McCrone continuing taking any medication prescribed by a health provider. For the reasons stated below, the imposition of that special condition unreasonably interferes with Mr. McCrone's liberty interest and was otherwise procedurally unreasonable. Consequently, the condition must be stricken from the judgment.

The Relevant Law

*A. The Waiver of Appeal.* Although waivers of the right to appeal a sentence are presumptively enforceable, United States v. Arevalo, 628 F.3d 93, 98 (2d Cir. 2010),

that presumption does not apply here, where the waiver provision in the plea agreement referred only to the conditions that "[i]t is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Guidelines Range of 135 to 168 months' imprisonment," and that "[t]he defendant further agrees not to appeal or bring a collateral challenge of any term of supervised release that is less than or equal to the statutory maximum."[1] (A 32; Plea Agreement at 5)

The provisions in the agreement self-evidently apply only to the length of the term of imprisonment and the fact of supervised release and the length of the term, not to any special condition a sentencing court might impose. See United States v. Franco, 733 Fed. Appx. 13, 15 (2d Cir. 2020) ("[i]n his plea agreement, Franco agreed he would not 'appeal any term of supervised release that is less than or equal to the statutory maximum,' but he did not waive the

---

[1] A thorough review of the record determined that the waiver of appeal of any sentence of 168 months or less, as well as a term of supervised release of five years, was valid, that entry of the underlying guilty plea was knowing, intelligent, and voluntary, and that there were no other non-frivolous issues with respect to the sentence or judgment of conviction.

right to appeal the conditions of supervised release[; a]ccordingly, Franco did not waive his right to appeal the special conditions of supervised release"), citing United States v. Burden, 860 F.3d 45, 54 (2d Cir. 2017) ("When an appeal waiver is silent regarding a specific aspect of a sentence, this Court generally finds that the appeal waiver does not foreclose challenges to that aspect of the sentence"). Since the circumstances are substantially identical to those in Franco, and as this Court implicitly recognized in its November 4, 2024, Order, the special condition may be appealed for procedural and substantive reasonableness.

A sentence is "procedurally unreasonable if a district court committed an error of law in the course of exercising discretion." United States v. Johnson, 567 F.3d 40, 52 (2009). In United States v. Sims, 92 F.4th 115 (2d Cir. 2024), the Court discussed the seven requirements for a district court to appropriately impose a special condition of supervised release: 1) the court must conduct an individualized assessment and find that the special condition is reasonably related to the sentencing factors; 2) the court must explain its reasoning, which must be supported by the record; 3) the condition must not impose a greater deprivation of liberty than reasonably necessary to

accomplish sentencing objectives; 4) the condition must be consistent with any pertinent policy statements issued by the Sentencing Commission; 5) the court must orally pronounce the condition in open court; 6) the condition must be sufficiently clear; and 7) the condition must not result in the court exceeding its ability to delegate decision-making authority to Probation. <u>Id</u>. at 123-25.

For a special condition of supervised release to be procedurally reasonable, "a District Court must make an individualized assessment when determining whether to impose a special condition of supervised release, and state on the record the reason for imposing it." <u>United States v. Kunz</u>, 68 F.4th 748, 759-60 (2d Cir. 2023).

Moreover, "[i]f a special condition implicates a fundamental liberty interest, we must carefully examine it to determine whether it is reasonably related to the pertinent factors, and involves no greater deprivation of liberty than is reasonably necessary, and our application of these criteria must reflect the heightened constitutional concerns." <u>United States v. Myers</u>, 426 F.3d 117, 126 (2d Cir. 2005). Finally, "[i]f the court fails to provide an explanation, we may uphold the special condition only if the court's reasoning is self-evident in the record." <u>United States v. Sims</u>, 92 F.4th at 124.

*B. The Prescribed Medication Condition*. Pursuant to U.S.S.G. 5D1.3(d), "[t]he following 'special' conditions of supervised release are recommended in the circumstances described and, in addition, may otherwise be appropriate in particular cases:

> (5)   Mental Health Program Participation
> If the court has reason to believe that the defendant is in need of psychological or psychiatric treatment — a condition requiring that the defendant participate in a mental health program approved by the United States Probation Office.

Id. This potential condition, however, does not on its face extend to a requirement that a defendant be subject to a requirement that he use any medication prescribed by a medical professional. Indeed, the Supreme Court has on several occasions recognized the significant liberty interests affected by the mandatory administration of medications geared towards mental health, in particular anti-psychotic medications. See Riggins v. United States, 504 U.S. 127, 137 (1992); Washington v. Harper, 494 U.S. 210, 221–22 (1990); see also Sell v. United States, 539 U.S. 166 (2003).

In light of these principles, courts in several circuits have held that the inclusion of a special condition that a defendant serving a term of supervised

release must "take prescribed medication as directed" was error in the absence of a particularized finding. See United States v. Malone, 937 F.3d 1325, 1326–29 (10th Cir. 2019) ("We consequently take this opportunity to make it clear that this condition, on its face, is an impermissible infringement into a defendant's significant liberty interests without the justifying support of particularized findings," noting that "[i]t is highly questionable whether the district court could have found compelling circumstances on this record to justify the imposition of the special condition," and remanding); United States v. Williams, 356 F.3d 1045, 1051–57 (9th Cir. 2004) ("[i]n sum, before a mandatory medication condition can be imposed at sentencing, the district court must make on-the-record, medically-grounded findings that court-ordered medication is necessary to accomplish one or more of the factors listed in § 3583(d)(1)[; a]lso, the court must make an explicit finding on the record that the condition 'involves no greater deprivation of liberty than is reasonably necessary'"); United States v. Prado, 53 F.4th 316, 318–19 (5th Cir. 2022) ("we agree with Prado that the general discussion about his need for medication was insufficient to put him on notice that the court was imposing a requirement to take such medication[; s]imply put, stating

that Prado should participate in a mental health program that gives him access to medication and expressing hope that these medications will help him is not the same as imposing a judicial requirement, subject to further revocation, that he must take those medications"). Significantly, in several of those decisions, the courts expressly concluded that the sentencing court had committed plain error in imposing the special condition. See Malone, 937 F.3d at 1328; Prado, 53 F.4th at 318. This suggests an emerging consensus among courts nationwide.

Recently, however, a panel of this Court has declined to vacate such a condition, albeit because it deemed the argument to have been abandoned on appeal. In a footnote in United States v. Roberson, No. 24-31-CR, 2007 WL 10131753, at n.2 (2d Cir. Feb. 6, 2025), the panel observed with respect to defendant Batiste that "[b]ecause this argument was raised, if at all, only in a single conclusory sentence in Batiste's opening brief, we consider it abandoned." Id. The panel added in dicta that "[i]n any event, the issue will only arise if, after Batiste's release from prison many years from now, a doctor prescribes some medication that Batiste objects to taking[; t]hat eventuality may never occur, and if it does, Batiste

will have every right to present his objection to the court." Id.

The Roberson panel cited no authority in support of its rationale that the issue need not be addressed since it might never arise, but at least one other court has employed similar reasoning to reach the same conclusion. See United States v. Williams, 30 F.4th 796, 801–02 (8th Cir. 2022) ("While medication compliance requirements may in certain circumstances risk infringing on protected constitutional liberty interests, it is currently speculative whether a medical professional will prescribe medication for Williams's substance abuse treatment in a way that unconstitutionally infringes on his liberty interests"). Plainly, this decision conflicts with the holdings of other circuits that have addressed the issue.

Despite the tension between the various decisions, the approach taken by the Fifth, Ninth, and Tenth circuits best reflects the requirements of procedural reasonableness and due process, namely that a condition of supervised release requiring a defendant to take any prescribed medications under penalty of being returned to incarceration is part of the sentence and should be addressed on direct appeal, rather than ignored until some future date when a defendant

specifically objects to being prescribed a specific medication.

In *United States v. Williams*, the Ninth Circuit convincingly explained the rationale for this conclusion:

> While the government suggests that the issue before us cannot be ripe until Williams refuses to take prescribed medicine, we have not required violation of a specified supervised release condition to permit appellate review. See, e.g., *United States v. Johnson*, 998 F.2d 696 (9th Cir.1993) (reviewing a condition requiring the appellant to participate in mental health counseling). In addition, requiring Williams to refuse to take medication in order to be accorded judicial review could, unacceptably, imperil his health.

356 F.3d at 1051-52. The Ninth Circuit in *Williams* also distinguished the prescribed medication requirement from scenarios concerning "only a hypothetical future revocation of supervised release [which] have no application here, as Williams is challenging a condition of his release imposed at the time of sentencing. *Id*. (emphasis added.)

For those reasons, and because here Mr. McCrone has fully and properly raised the issue on direct appeal, the Court should not adopt the reasoning of the panel in *Roberson*, and should instead take its guidance from the numerous cases that have addressed the issue thoroughly to conclude that the prescribed medication requirement is appropriately be raised and decided on direct appeal.

The Imposition of The Special Condition
Was Unreasonable Under The Circumstances Here.

As in <u>Malone</u>, <u>Williams</u>, and <u>Prado</u>, the record here does not contain any indication of a particularized finding or that the requirement involved no greater deprivation of liberty than is reasonably necessary. The presentence report described Mr. McCrone's difficult childhood and upbringing, including that his mother was an alcoholic and drug abuser, that it was possible that he had been sexually abused by his older brother, and that his mother had entered relationships with at least two men who were themselves violent and otherwise abusive towards him. (PSR at ¶¶ 63-64) Mr. McCrone also stated that he had suffered from depression for decades, although there was no indication that he was currently or had ever been under medication for that condition. (PSR at ¶ 73)

The presentence report did indicate that Mr. McCrone was prescribed several medications for non-psychological issues, including an inhaler, several medications for diabetes, and for an enlarged prostate. (PSR at ¶ 71) Mr. McCrone also disclosed a lengthy history of illicit drug and alcohol abuse, and expressed a desire to continue with drug treatment services. (PSR at ¶¶ 74, 82)

In its Sentencing Recommendation and Justification, the presentence report reiterated that: "McCrone's childhood was reportedly devoid of love, affection, and guidance. Furthermore, he was neglected and physically, emotionally, and sexually abused, which has compromised his mental health. Because he was miserable with his living arrangements, McCrone was transient as a teenager. Admittedly, because of his exposure to alcohol and drugs at a young age by family members, McCrone began consuming alcohol and using illicit drugs." (PSR at 21) With respect to supervised release in particular, the presentence report stated: "[a]s special conditions of supervised release, the Probation Office recommends that the defendant participate in outpatient substance use treatment given his longstanding illicit drug use history and mental health treatment to address his depression." (PSR at 21) The Recommendation and Justification did not contain any language relating to prescribed medication, let alone a rationale for requiring Mr. McCrone to take any such medication. (PSR at 21)

At sentencing, the district court, while acknowledging Mr. McCrone's drug and mental health challenges, made no observations connecting either of those issues to prescribed medications:

You know, this description of not only the
direct abuse, but the neglect such as the adults
in his life letting an infected foot get so bad
that he ended up in the hospital for six months.
It's pretty Dickensian.

And it does not appear that the defendant's
gotten any formal mental health treatment. He's
gotten drug treatment, but only when
incarcerated. I can't understand why that was not
part of parole. But in any event, I agree with
Ms. Louis-Jeune that this is an individual who's
going to need mental health treatment, perhaps
even more than drug treatment because the --
until he deals with those issues, the chances are
good he is going to go back to what he's been
doing his whole life.

So it's certainly mitigating that this
defendant's childhood was so awful, and he's --
for a middle-aged man, he's got the health
problems of a much older person, and that's what
happens from a lifetime of drinking and drugs.
It's a good sign that he's completed a program in
the jail and continued with it even when he
didn't have to. Those are all on the plus side.
(A 73-74; Sentencing Tr. at 10-11)

In discussing the importance of adhering to the

requirements of supervised release and how they could

benefit Mr. McCrone, the Court stated:

You will get the help this time around, but
unfortunately, all too often people get help, and
they still revert to their past ways, and that's
what I am worried about here and why I didn't
feel like I could go any lower, both because of
the need to protect the public and the
seriousness of the offense. So you will have
plenty of time to think about how you are going
to try to make things different this time.

I will tell you federal supervision you will
probably find different from parole. The people
who are supervising you in the feds really want

to help you. They really want you to succeed.
They feel like they have failed if they have to
bring you back before a judge on a violation, but
you have to let them help you, and that means
being honest with them even when you screw up. I
can't tell you how many people come through here,
and they get in trouble because they relapsed,
and instead of just saying, you know what, I
relapsed, I need a more intensive program, they
lie about it or they get pulled over, and instead
of informing their probation officer, they lie
about it, and then they are not letting
Probation, their probation officer help them, and
they end up in a lot more hot water than they
otherwise would have been.

So I hope when you get out, and I recognize
that's a ways off, but I hope when you get out,
you will let them help you. They really do want
to help you. The best thing that can happen is
you and I never see each other again because that
means you got out, and you were able to change. I
think that you've taken some big steps already.
And that was probably with the help of Dr.
Pearson. She got you opening up, and that's going
to be a big part of what you need to do. (A 79-
80; Sentencing Tr. at 16-17)

Applying the reasons stated by this Court in <u>United
States v. Kunz</u>, 68 F.4th at 759-60, <u>United States v. Myers</u>,
426 F.3d at 126, and <u>United States v. Sims</u>, 92 F.4th at
124, and as further made clear in the in the multiple cases
from other circuits, the imposition of the special
condition of supervised release here was procedurally
unreasonable.

At the outset, the above excerpts from the sentencing
transcript make clear that the district court neither made

an individualized assessment whether to impose the prescribed medication requirement nor did the court state on the record its reason for imposing it. (A 73-74, 79-80; Sentencing Tr. at 10-11; 16-17) In fact, the district court made no reference to prescription medication whatsoever, other than to have repeated nearly verbatim the recommended special condition contained in the presentence report. (A 76; Sentencing Tr. at 13)

Nor, in light of the statements made by the court or the Probation Department, can it be said that the prescription medication requirement was reasonably related to the pertinent factors or that it would involve no greater restriction on liberty than necessary. To the contrary, there was no indication in the record that such a requirement was necessary at all.

Finally, and for the same reasons, the basis for imposition of the requirement was not "self-evident" from the record. To be sure, the court and the parties were in agreement that Mr. McCrone had suffered badly in his life and that he would benefit from continued mental health treatment, but at no time was there any suggestion that such care required, or even should involve, prescribed medication for psychotropic or any other mental health-

related reasons. Indeed, the record did not even rise to the level of that in <u>Malone</u>, where the court observed:

> [Defendant] also reported suffering from anxiety and depression but nevertheless explained that he is hesitant to take any medication to help his anxiety, as he does not want to feel tranquilized during the day[, and] his mother mentioned that a teacher once recommended placing Mr. Malone on Ritalin to help him control his behavior at school. This is the full extent of the PSR's discussion of Mr. Malone's mental health concerns. Based on these paltry details alone, the district court vaguely explained the "[n]ature of the offense and history outlined in the presentence report warrant the conditions for ... participation in substance abuse and mental health counseling" and, without further ado, imposed the special condition of supervised release requiring Mr. Malone to "take prescribed medication as directed."

937 F.3d at 1328 (concluding that "[i]t is highly questionable whether the district court could have found compelling circumstances on this record to justify the imposition of the special condition on Mr. Malone, even had it properly embarked on such an inquiry").

And while the court did echo the presentence report's concerns about Mr. McCrone's overall physical health, with respect to which the presentence report noted he took several prescription medications, it is difficult to imagine that either the Probation Department or the court intended that Mr. McCrone be required to continue taking those medications—or any new medications a doctor might

prescribe—under penalty of being returned to incarceration. See United States v. Williams, 356 F.3d at 1055 ("[r]eplacing Williams' incarceration with a court-backed threat of renewed incarceration should he violate an order to take prescribed psychotropic medication does not eliminate the coercive nature of the medication requirement or otherwise lessen the impairment of the recognized liberty interest in being free of unwanted antipsychotic medication").

Finally, although Mr. McCrone's attorney did not object to the imposition of the special condition, and plain error review therefore applies, the standards for plain error are satisfied here. See, e.g., United States v. Arguedas, 134 F.4th 54, 68 (2d Cir. 2025) ("under plain error review, an appellant must demonstrate that (1) there is an error, (2) the error is clear or obvious, rather than subject to reasonable dispute, (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings, and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings").

The failure to engage in the requisite particularized assessment or to state the reasons in open court

constituted error that was clear or obvious.  See United States v. Kunz, 68 F.4th at 759-60.  And, as the other courts throughout the federal system have recognized, a requirement that the defendant take prescribed medication affects an especially significant right, and for that reason, the error in depriving the defendant of that right necessarily had a serious effect on the fairness, integrity, and public reputation of judicial proceedings. See Malone, 937 F.3d at 1328; Prado, 53 F.4th at 318. Accordingly, the imposition of the special condition was procedurally unreasonable and the condition must be stricken from the judgment.


POINT II

THE SEARCH CONSENT CONDITION OF SUPERVISED RELEASE WITH RESPECT TO COMPUTERS AND OTHER ELECTRONIC DEVICES MUST BE VACATED SINCE IT WAS NOT SUPPORTED BY AN INDIVIDUALIZED ASSESSMENT THAT IT WAS REASONABLY RELATED TO SENTENCING FACTORS, THE REASON FOR THE CONDITION WAS NOT EXPLAINED ON THE RECORD, AND IN ANY EVENT THE SWEEPING SEARCH CONDITION WAS AN OVERBROAD INTRUSION ON MR. MCCRONE'S LIBERTY INTERESTS.

On April 14, 2025, this Court decided United States v. Robinson, 134 F.4th 104 (2d Cir. 2025), a firearms possession case in which it rejected the defendant's challenge to a special condition of supervised release requiring the defendant to submit to searches of computers

and other electronic devices.   Among other things, the Robinson Court held that although "there is no question that the district court erred in failing to conduct an individualized assessment when imposing the special search condition, … given Robinson's extensive history of recidivism and his dishonesty with law enforcement officers, we find that the need for this special condition is self-evident on the record." Id. at 111.   The Court also rejected a 4th amendment challenge to the condition, holding that in light of the diminished privacy expectation afforded those serving a term of supervised release, the substantial government interest in ensuring that a defendant complies with supervised release requirements was sufficient to justify a narrowly tailored warrantless search condition of electronic devices. Id. at 113-14.

Although Robinson would seem to undermine an argument here that a substantially identical electronic search condition imposed on a similarly situated defendant was procedurally or substantively unreasonable, or violated the defendant's fourth amendment rights, we raise the issue here because the United States Supreme Court has not yet decided this question, the Appellant in Robinson may well seek certiorari, and in any event, the Robinson Court itself recognized some tension with the Supreme Court's

decision in <u>Riley v. California</u>, 573 U.S. 373, 396 (2014), in which the Court noted the especially intrusive nature of electronic searches, although the <u>Robinson</u> Court ultimately concluded that supervised release conditions fell within "other case-specific exceptions" contemplated in <u>Riley</u>. <u>Robinson</u>, 134 F.4th at 113-14.

As in <u>Robinson</u>, the district court here orally imposed the following special condition of supervised release on Mr. McCrone:

> He will submit his person and any property, residence, vehicle, papers, effects, <u>computers, other electronic communication or data storage devices, cloud storage or media</u> to a search by any probation officer with the assistance of law enforcement if needed. The search is to be conducted upon reasonable suspicion concerning a violation of a condition of supervision or unlawful conduct by the defendant. Failure to submit to search may be grounds for revocation. Defendant shall warn any other occupants that the premises may be subject to search pursuant to this condition. Any search will be conducted at a reasonable time and in a reasonable manner. (A 77; Sentencing Tr. at 14; emphasis added.)

In <u>United States v. Sims</u>, 92 F.4th 115 (2d Cir. 2024), the Court discussed the seven requirements for a district court to appropriately impose a special condition of supervised release: 1) the court must conduct an individualized assessment and find that the special condition is reasonably related to the sentencing factors;

2) the court must explain its reasoning, which must be supported by the record; 3) the condition must not impose a greater deprivation of liberty than reasonably necessary to accomplish sentencing objectives; 4) the condition must be consistent with any pertinent policy statements issued by the Sentencing Commission; 5) the court must orally pronounce the condition in open court; 6) the condition must be sufficiently clear; and 7) the condition must not result in the court exceeding its ability to delegate decision-making authority to Probation. Id. at 123-25.

This violated the requirements enunciated in United States v. Sims, 92 F.4th 115, since, although the record indicates that the district court orally pronounced the special condition in open court, it provided only a bare recitation of the requirements, without any explanation of its reasoning or any suggestion that it had engaged in an individualized assessment regarding Mr. McCrone. (A 77-80; Sentencing Tr. at 14-17)

Nor can the record support a conclusion that the court's reasoning was "self-evident in the record." United States v. Sims, 92 F.4th at 124. To be sure, Mr. McCrone's personal history and extensive criminal record could reasonably serve as a basis for a requirement that he submit to a search of his person, his residence, and his

vehicle, but the same cannot be said of "computers, other electronic communication or data storage devices, cloud storage or media."

Indeed, nothing in the presentence report furnishes a basis to conclude that the search condition was clearly warranted. The presentence report stated the following:

> Following the defendant's term of imprisonment, five years' supervised release is recommended. We believe that this maximum period of community-based supervision is necessary to ensure protection of the community and to allow McCrone to take full advantage of the various resources and/or programs that may be available to him through the Probation Office. We want his transition to society to be a successful one, and we do not want him to reoffend. As special conditions of supervised release, the Probation Office recommends that the defendant participate in outpatient substance use treatment given his longstanding illicit drug use history and mental health treatment to address his depression. Financial restrictions and disclosure are also proposed given McCrone's forfeiture obligations ($79,200), and <u>a condition of search and seizure is suggested to protect the community because the instant offenses involved narcotics</u>. (PSR at 21; emphasis added.)

On its face, the recommendation with respect to the search condition was based exclusively on the nature of the offense, and did not give any individualized explanation regarding Mr. McCrone. A search condition including computers and electronic storage devices that will on its face affect nearly any imaginable aspect of his life, was overly broad in that it represented a greater infringement

on his liberty interests than necessary to ensure the goals of sentencing and supervision. See Riley v. California, 573 U.S. at 395 (noting computers, phones, and other electronic storage media contain "a broad array of private information never found in a home in any form" including "photographs, picture messages, text messages, Internet browsing history, a calendar, a thousand-entry phone book," as well as location information that can "reconstruct someone's specific movements down to the minute." Id. at 394-96; United States v. Sims, 92 F.4th at 124-25 (courts must "consider whether [the condition] represents a greater deprivation of liberty than is necessary to achieve that goal," or whether "the deprivation is narrowly tailored to serve a compelling government interest"), quoting United States v. Myers, 426 F.3d 117, 126 (2d Cir. 2005).

Significantly, the court also noted the requirement that "[t]he imposition of a special condition affecting a cognizable liberty interest must be supported by particularized findings that it does not constitute a greater deprivation of liberty than reasonably necessary to accomplish the goals of sentencing." Sims, 92 F.4th at 124-25 (emphasis added). Here, as demonstrated above, there were no particularized findings that would have

justified the all-encompassing scope of searches to which
he was potentially subjected.

In a case where the facts related to an
unsophisticated narcotics conspiracy involving telephone
calls, voicemails, face-to-face meetings, and text
messages, there is no imaginable basis a search requirement
of computers and electronic communications devices, data
storage devices, and cloud storage or other media would be
necessary to advance the goals of supervised release. This
is particularly so since there is no allegation in the
presentence report or anywhere else that such devices were
used in connection with the conspiracy, and the searches of
residences and other premises did not uncover the use of
such devices as part of the conspiracy. (A 20-21;
Complaint at 12-13)

Under such circumstances, a sweeping requirement that
Mr. McCrone consent to any search of all property within
his residence—including computers and other electronic
devices—cannot be justified consistent with constitutional
liberty interests. See <u>Riley v. California</u>, 573 U.S. at
394-96; <u>United States v. Oliveras</u>, 96 F.4th 298, 316, n.8
(2d Cir. 2024) ("In light of the constitutional rights
implicated by conditions of supervised release permitting
monitoring of computer devices or restricting access to the

internet, we have repeatedly emphasized that such conditions must be 'narrowly tailored' and 'robustly supported' by a district court"; see also United States v. Morrishow, 2024 WL 4690524, at *2-3 (2d Cir. Nov. 6, 2024) ("At sentencing, the district court did not explain its reasoning for imposing the electronic search condition, nor is any justification for doing so self-evident[, and t]here is scant evidence in the record indicating that the instant offense or any of Morrishow's prior offenses involved the use of electronics").

Accordingly, the computer search provision should be stricken from the judgment, or the matter should be remanded to the district court with instructions to strike the overbroad provisions of the search requirement or to clarify its individualized basis for imposing the condition.

## Conclusion

The erroneously imposed conditions of supervised release must be vacated, and the matter remanded for the filing of an amended judgment striking the conditions or for further proceedings in the district court.

Dated:   New York, New York
          July 2, 2025

/s/_____
BRENDAN WHITE
White & White
524 East 20th Street, #6D
New York, NY  10009
(646) 303-0267
hendonbgb@gmail.com

Attorney for Defendant-
 Appellant David McCrone

**Certificate of Compliance with FRAP 32(a)(7)**

It is hereby certified that the annexed Brief of Appellant David McCrone contains 8,034 words, including footnotes and headings, and was printed in 12-point monospaced typeface in Microsoft Word format.

Dated: New York, NY
July 2, 2025

_/s/_____

BRENDAN WHITE

# APPENDIX

# Appendix Table of Contents

Page

Docket Entries................................................1

Complaint...................................................9

Indictment................................................23

Plea Agreement............................................28

Plea Transcript...........................................35

Sentencing Transcript.....................................64

Judgment..................................................82

Notice of Appeal..........................................89

# U.S. District Court
## Southern District of New York (White Plains)
## CRIMINAL DOCKET FOR CASE #: 7:21-cr-00463-CS-4

Case title: USA v. Chinnery et al

Date Filed: 07/20/2021

Magistrate judge case number: 7:21-mj-06532-UA

Date Terminated: 12/09/2022

| Date Filed | # | Docket Text |
|---|---|---|
| 06/25/2021 | | SEALED DOCUMENT placed in vault. (lnl) [7:21-mj-06532-UA] (Entered: 06/29/2021) |
| 06/25/2021 | 1 | SEALED COMPLAINT as to Sealed Defendant 1 (1). (Signed by Magistrate Judge Paul E. Davison) (lnl) [7:21-mj-06532-UA] (Entered: 06/29/2021) |
| 06/28/2021 | 2 | Order to Unseal Case as to Sealed Defendant 1. (Signed by Magistrate Judge Judith C. McCarthy on 6/28/2021)(lnl) [7:21-mj-06532-UA] (Entered: 06/29/2021) |
| 06/28/2021 | | COMPLAINT UNSEALED as to David McCrone. (lnl) [7:21-mj-06532-UA] (Entered: 06/29/2021) |
| 06/28/2021 | 3 | Minute Entry for proceedings held before Magistrate Judge Judith C. McCarthy:Initial Appearance as to David McCrone held on 6/28/2021. AUSA T. Josiah present for the Government. Defense Counsel Jennifer Louis-Jeune present for the Defendant. The defendant was advised of his rights and the charges against him. Public reading of the complaint waived. Financial affidavit approved Jennifer Louis-Jeune was appointed to represent the defendant. Defendant detained on consent without prejudice to a future bail application. Preliminary Hearing: 7/28/2021. (Courtflow) (lnl) [7:21-mj-06532-UA] (Entered: 06/29/2021) |
| 06/28/2021 | 4 | CJA 23 Financial Affidavit by David McCrone. APPROVED. (Signed by Magistrate Judge Judith C. McCarthy) (lnl) [7:21-mj-06532-UA] (Entered: 06/29/2021) |
| 06/28/2021 | 5 | MEDICAL ORDER as to David McCrone. (Signed by Magistrate Judge Judith C. McCarthy on 6/28/2021) (Order on file with the Clerk's Office) (lnl) [7:21-mj-06532-UA] (Entered: 06/29/2021) |
| 06/28/2021 | | Arrest of David McCrone. (lnl) [7:21-mj-06532-UA] (Entered: 06/29/2021) |
| 07/20/2021 | 13 | INDICTMENT FILED as to Pedro Chinnery (1) count(s) 1, Jermaine Lightfood (2) count(s) 1-2, Stan Jones (3) count(s) 2, David McCrone (4) count(s) 2, Jason Brandt (5) count(s) 1. (ap) (Entered: 07/20/2021) |
| 07/20/2021 | | Case Designated ECF as to Pedro Chinnery, Jermaine Lightfood, David McCrone, Jason Brandt, Stan Jones. (ap) (Entered: 07/20/2021) |
| 07/26/2021 | 14 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 07/27/2021) |
| 08/04/2021 | 16 | SCHEDULING ORDER as to David McCrone. The Court has scheduled an arraignment on an indictment for 8/12/2021 at 12 pm before Magistrate Judge Paul E. Davison. The Court expects to conduct the proceeding in person at the Hon. Charles L. Brieant, Jr., Courthouse, 300 Quarropas Street, Courtroom 420, White Plains, NY 10601. Per the SDNY COVID-19 Courthouse Entry Program, anyone who appears at any SDNY courthouse must complete a questionnaire and have his or her temperature taken. The |

| | | questionnaire is located on the Courts website at https://nysd.uscourts.gov/sites/default/files/2020-10/QR%20Sign%20-% 20Public_Media_v.5.pdf. (Change of Plea Hearing set for 8/12/2021 at 12:00 PM in Courtroom 420, 300 Quarropas Street, White Plains, NY 10601 before Magistrate Judge Paul E. Davison) (Signed by Magistrate Judge Paul E. Davison on 8/4/2021) (ap) (Entered: 08/04/2021) |
|---|---|---|
| 08/05/2021 | | Case as to Pedro Chinnery, Jermaine Lightfood, David McCrone, Jason Brandt, Stan Jones REASSIGNED to Judge Cathy Seibel. Judge Unassigned no longer assigned to the case. (lnl) (Entered: 08/05/2021) |
| 08/09/2021 | 21 | AMENDED SCHEDULING ORDER as to David McCrone. The previously scheduled Arraignment for August 12, 2021 at 12:00 p.m. is amended as follows: Defendant will be arraigned at 12:00 p.m. on August 12th before United States District Judge Cathy Seibel in Courtroom 621 at the Hon. Charles L. Brieant, Jr. Courthouse, 300 Quarropas Street, White Plains, New York 10601. Per the SDNY COVID-19 Courthouse Entry Program, anyone who appears at any SDNY Courthouse must complete a questionnaire and have his or her temperature taken. The Questionnaire is located on the Court's website at: https://nysd.uscourts.gov/sites/default/files/2020-10 /QR%20Sign%20- %20Public_Media_v.5.pdf (Arraignment set for 8/12/2021 at 12:00 PM in Courtroom 621, 300 Quarropas Street, White Plains, NY 10601 before Judge Cathy Seibel). (Signed by Judge Cathy Seibel on 8/9/21)(jw) (Entered: 08/09/2021) |
| 08/09/2021 | | Terminate Deadlines and Hearings as to David McCrone: (jw) (Entered: 08/09/2021) |
| 08/12/2021 | | Minute Entry for proceedings held before Judge Cathy Seibel: Arraignment as to Jermaine Lightfoot (2) Count 1-2 and Stan Jones (3) Count 2 and David McCrone (4) Count 2 held on 8/12/2021. Plea entered by Jermaine Lightfoot (2) Count 1-2 and Stan Jones (3) Count 2 and David McCrone (4) Count 2 Not Guilty. Defendant Jermaine Lightfoot (2) is present with counsel, Lance Lazzaro, Esq. Defendant Stan Jones (3) is present with counsel, Bruce Koffsky, Esq. Defendant David McCrone (4) is present with counsel, Joseph Vita, Esq. (standing in place of counsel Jennifer Louis-Juene, Esq.) AUSA Josiah Pertz, Esq. is present. Court Reporter is Darby Ginsberg. An initial presentment as to the Indictment is conducted as to Defendant Jones (3). The Court hereby appoints counsel Bruce Koffsky, Esq. as counsel for Defendant Jones (3) in this case as well as Defendant Jones (3) V.O.S.R. case (19 CR 180 (NSR)). Defendant(s) Lightfoot (2), Jones (3), and McCrone (4) are all arraigned as to the Indictment. Defendant(s) Lightfoot (2), Jones (3), and McCrone (4) all enter a plea of not guilty and waive the public reading. Defense counsel is in agreement with the existing discovery schedule set in place. The Court reminds the Government of its Brady obligations as per amendment to Rule 5(f). The Court schedules the next status conference for October 27, 2021 at 2:45 p.m. The Court finds time excluded between now and October 27, 2021 under the Speedy Trial Act as to enable Defendants and counsel to review discovery and figure out next steps outweigh the interests of the public and Defendant. See transcript. (jbo) (Entered: 08/13/2021) |
| 08/13/2021 | 24 | NOTICE OF ATTORNEY APPEARANCE Jeffrey Coffman appearing for USA. (Coffman, Jeffrey) (Entered: 08/13/2021) |
| 08/13/2021 | 26 | RULE 5(f) ORDER as to Jermaine Lightfoot, David McCrone, Stan Jones. (Signed by Judge Cathy Seibel on 8/13/21)(jbo) (Entered: 08/13/2021) |
| 08/24/2021 | 27 | LETTER by USA as to Pedro Chinnery, Jermaine Lightfoot, Stan Jones, David McCrone, Jason Brandt addressed to Judge Cathy Seibel from Jeffrey C. Coffman dated August 24, 2021 re: Protective Order Document filed by USA. (Attachments: # 1 Text of Proposed Order)(Coffman, Jeffrey) (Entered: 08/24/2021) |

| | | |
|---|---|---|
| 08/24/2021 | 28 | PROTECTIVE ORDER as to Pedro Chinnery, Jermaine Lightfoot, David McCrone, Jason Brandt, Stan Jones...regarding procedures to be followed that shall govern the handling of confidential material... (Signed by Judge Cathy Seibel on 8/24/2021) (lnl) (Entered: 08/24/2021) |
| 10/14/2021 | 32 | NOTICE RE: CHANGE OF TIME OF CONFERENCE: as to Pedro Chinnery, Jermaine Lightfoot, David McCrone, Jason Brandt, Stan Jones. The Status Conference previously scheduled before this Court for October 27, 2021 at 2:45 p.m. will be held at 9:15 a.m. (same date) at the United States District Courthouse, 300 Quarropas Street, White Plains, New York 10601 in Courtroom 621. (/s/ Walter Clark, Courtroom Deputy, Dated: October 14, 2021) (bw) (Entered: 10/14/2021) |
| 10/27/2021 | | Minute Entry for proceedings held before Judge Cathy Seibel: Status Conference as to Pedro Chinnery, Jermaine Lightfoot, David McCrone, Jason Brandt, Stan Jones held on 10/27/2021. Defendant Pedro Chinnery (1) is present with counsel, Frank OReilly, Esq. Defendant Jermaine Lightfoot (2) is present with counsel, Jason Russo, Esq. Defendant Stan Jones (3) is present with counsel, Bruce Koffsky, Esq. Defendant David McCrone (4) is present with counsel, Jennifer Louis-Jeune, Esq. Defendant Jason Brandt (5) is present with counsel, Richard Willstatter, Esq. AUSA Jeffrey Coffman, Esq. is present. Court Reporter is Christina Arends-Dieck. The Government informs the Court that a batch of discovery was produced on September 9, 2021 to counsel(s) and the Defendant(s). The Government informs the Court that the bulk of discovery will be turned before the end of next week. The Court grants the parties' request to set another conference in sixty (60) days. The Court schedules the next status conference for December 16, 2021 at 9:30 a.m. The Court finds time excluded between now and December 16, 2021 under the Speedy Trial Act as to enable defense counsel a final opportunity to review discovery with Defendant(s) and figure out next steps outweigh the interests of the public and Defendant. Defendant(s) Chinnery (1), Lightfoot (2), Jones (3), McCrone (4), and Brandt (5) custody is continued. See transcript. (jbo) (Entered: 10/27/2021) |
| 11/24/2021 | 38 | MOTION to Appoint Counsel *Kestine Thiele*., MOTION to Seal Document . Document filed by David McCrone. (Louis-Jeune, Jennifer) (Entered: 11/24/2021) |
| 11/29/2021 | 39 | BILL OF PARTICULARS by USA as to Pedro Chinnery, Jermaine Lightfoot, Stan Jones, David McCrone, Jason Brandt *Forfeiture Bill of Particulars*. (Pertz, Timothy) (Entered: 11/29/2021) |
| 11/30/2021 | 40 | NOTICE RE: CHANGE OF TIME OF CONFERENCE as to Pedro Chinnery, Jermaine Lightfoot, David McCrone, Jason Brandt, Stan Jones. The Status Conference previously scheduled before this Court for December 16, 2021 at 9:30 a.m. will be held at 9:00 a.m. (same date) at the United States District Courthouse, 300 Quarropas Street, White Plains, New York 10601 in Courtroom 621. (Status Conference set for 12/16/2021 at 09:00 AM before Judge Cathy Seibel) (ap) (Entered: 11/30/2021) |
| 12/16/2021 | | Minute Entry for proceedings held before Judge Cathy Seibel: Status Conference as to Pedro Chinnery, Jermaine Lightfoot, David McCrone, Jason Brandt, Stan Jones held on 12/16/2021. Defendant Pedro Chinnery (1) is present with counsel, Frank O'Reilly, Esq. Defendant Jermaine Lightfoot (2) is present with counsel, Jason Russo, Esq. Defendant Stan Jones (3) is present with counsel, Frank O'Reilly, Esq. (standing in place for Bruce Koffsky, Esq.) Defendant David McCrone (4) is present with counsel, Jennifer Louis-Jeune, Esq. Defendant Jason Brandt (5) is present with counsel, Richard Willstatter, Esq. AUSA Josiah Pertz, Esq. is present Court Reporter is Darby Ginsberg The Government informs the Court that it has produced discovery with regard to state and federal wire taps; however, additional discovery (more like 3500 material) will be produced next week. Rule 16 discovery expected to be turned over in totality by early January 2022. |

| | | |
|---|---|---|
| | | Trial is estimated to last three weeks. The Court sets a motion and trial schedule as follows: Defendants' Motion(s) to be submitted by February 15, 2022; Government opposition due March 1, 2022; Defendants' replies due March 8, 2022. The Court will issue a ruling from the bench or hold evidentiary hearing on April 7, 2022 at 10:00 a.m. Final Pre-Trial Conference scheduled for September 22, 2022 at 10:00 a.m. Jury selection and trial scheduled for October 3, 2022 at 9:30 a.m. Motion(s) in Limine to be submitted by August 18, 2022; opposition due September 1, 2022. Government's marked exhibits to be submitted by September 19, 2022; 3500 material to be submitted by September 26, 2022. The Court finds time excluded between now and October 3, 2022 under the Speedy Trial Act as to permit the continuity of counsel, permit parties to litigate motions, and prepare for trial outweigh the interests of the public and Defendant. Defendant(s) Chinnery (1), Lightfoot (2), Jones (3), McCrone (4), and Brandt (5) custody is continued. See transcript. (jbo) (Entered: 01/20/2022) |
| 01/09/2022 | 42 | BILL OF PARTICULARS by USA as to Pedro Chinnery, Jermaine Lightfoot, Stan Jones, David McCrone, Jason Brandt *(Amended Bill of Particulars)*. (Pertz, Timothy) (Entered: 01/09/2022) |
| 01/12/2022 | 43 | ORDER FOR CONTINUED CUSTODY OF PROPERTY PURSUANT TO 21 U.S.C. § 853 as to Pedro Chinnery, Jermaine Lightfoot, David McCrone, Jason Brandt, Stan Jones: IT IS HEREBY ORDERED, pursuant to Title 21, United States Code, Section 853(e)(l), that the United States and its agencies, including the United States Marshals Service, are authorized to maintain and preserve the Subject Property until the conclusion of the instant case, pending further Order of this Court. SO ORDERED. (Signed by Judge Cathy Seibel on 1/11/2022)(lnl) (Entered: 01/12/2022) |
| 02/22/2022 | 44 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Pedro Chinnery, Jermaine Lightfoot, David McCrone, Jason Brandt, Stan Jones. Notice is hereby given that an official transcript of a Conference proceeding held on 12/16/2021 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Ginsberg, Darby) (Entered: 02/22/2022) |
| 02/22/2022 | 45 | TRANSCRIPT of Proceedings as to Pedro Chinnery, Jermaine Lightfoot, David McCrone, Jason Brandt, Stan Jones re: Conference held on 12/16/2021 before Judge Cathy Seibel. Court Reporter/Transcriber: Darby Ginsberg, (914) 390-4102, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/15/2022. Redacted Transcript Deadline set for 3/25/2022. Release of Transcript Restriction set for 5/23/2022. (Ginsberg, Darby) (Entered: 02/22/2022) |
| 02/25/2022 | 48 | SEALED DOCUMENT placed in vault. (ap) (Entered: 03/03/2022) |
| 03/24/2022 | 51 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Pedro Chinnery, Jermaine Lightfoot, David McCrone, Jason Brandt, Stan Jones. Notice is hereby given that an official transcript of a Hearing proceeding held on 8/12/21 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Arends-Dieck, Christina) (Entered: 03/24/2022) |
| 03/24/2022 | 52 | TRANSCRIPT of Proceedings as to Pedro Chinnery, Jermaine Lightfoot, David McCrone, Jason Brandt, Stan Jones re: Hearing held on 8/12/21 before Magistrate Judge |

| | | Paul E. Davison. Court Reporter/Transcriber: Christina Arends-Dieck, (914) 390-4103, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 4/14/2022. Redacted Transcript Deadline set for 4/25/2022. Release of Transcript Restriction set for 6/22/2022. (Arends-Dieck, Christina) (Entered: 03/24/2022) |
|---|---|---|
| 05/02/2022 | [53](#) | NOTICE OF ATTORNEY APPEARANCE: Kestine Thiele appearing for David McCrone. Appearance Type: CJA Appointment. (Thiele, Kestine) (Entered: 05/02/2022) |
| 05/20/2022 | [54](#) | NOTICE OF ADJOURNMENT OF CONFERENCE as to Pedro Chinnery, Jermaine Lightfoot, David McCrone, Jason Brandt, Stan Jones. The Final Pre-Trial Conference previously scheduled before this Court for September 22, 2022 at 10:00 a.m. is adjourned to September 27, 2022 at 9:30 a.m. in Courtroom 621 of the United States District Courthouse, 300 Quarropas Street, White Plains, New York 10601. (Pretrial Conference set for 9/27/2022 at 09:30 AM in Courtroom 621, 300 Quarropas Street, White Plains, NY 10601 before Judge Cathy Seibel) (ap) (Entered: 05/20/2022) |
| 06/09/2022 | 57 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 06/09/2022) |
| 08/04/2022 | | Minute Entry for proceedings held before Magistrate Judge Judith C. McCarthy: Change of Plea Hearing as to David McCrone held on 8/4/2022. The defendant present with attorney Jennifer Louis-Jeune. AUSA: Josiah Pertz and Jeffrey Coffman. After executing the consent form to enter a Felony Plea Allocution before a United States Magistrate Judge, the defendant withdraws his previously entered plea of not guilty and now pleads guilty to a lesser included offense of Count 2 of the Felony Indictment. The Court directs a Pre Sentence Investigation. Sentencing before Judge Seibel has been scheduled for November 15, 2022 at 2:15 p.m. Report and Recommendation will be provided to the U.S.D.J via transcript. Detention continued. (Sentencing set for 11/15/2022 at 02:15 PM before Judge Cathy Seibel) (Court Reporter Sue Ghorayeb) (ap) (Entered: 08/04/2022) |
| 08/04/2022 | | Minute Entry for proceedings held before Magistrate Judge Judith C. McCarthy: **Plea entered by David McCrone (4) Guilty of Lesser Offense as to Count 2.** (ap) (Entered: 08/04/2022) |
| 08/04/2022 | | Oral Order of Referral to Probation for Presentence Investigation and Report as to David McCrone. (Signed by Magistrate Judge Judith C. McCarthy on 8/4/2022) (ap) (Entered: 08/04/2022) |
| 08/04/2022 | [59](#) | CONSENT TO PROCEED BEFORE US MAGISTRATE JUDGE ON A FELONY PLEA ALLOCUTION by David McCrone. (ap) (Entered: 08/04/2022) |
| 08/10/2022 | 61 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 08/11/2022) |
| 08/16/2022 | [64](#) | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Pedro Chinnery, Jermaine Lightfoot, David McCrone, Jason Brandt, Stan Jones. Notice is hereby given that an official transcript of a Plea proceeding held on 08/12/2022 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Ginsberg, Darby) (Entered: 08/16/2022) |
| 08/16/2022 | [65](#) | TRANSCRIPT of Proceedings as to Pedro Chinnery, Jermaine Lightfoot, David McCrone, Jason Brandt, Stan Jones re: Plea held on 08/12/2022 before Magistrate Judge Paul E. Davison. Court Reporter/Transcriber: Darby Ginsberg, (914) 390-4102, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that |

| | | |
|---|---|---|
| | | date it may be obtained through PACER. Redaction Request due 9/6/2022. Redacted Transcript Deadline set for 9/16/2022. Release of Transcript Restriction set for 11/14/2022. (Ginsberg, Darby) (Entered: 08/16/2022) |
| 08/22/2022 | 73 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 08/23/2022) |
| 09/09/2022 | 79 | ORDER granting 76 LETTER MOTION for adjournment: Jury selection and trial are adjourned to 11/7/22. The final pretrial conference will be 10/28/22 at 10 am. Motions in limine are due 10/3/22, with opposition due 10/10/22. Proposed voir dire questions and jury instructions are also due 10/10/22. Marked Government exhibits are to be turned over by 10/24/22, and 3500 material is to be turned over by 10/31/22 (subject to application by the Government if delay is necessary for safety or investigative reasons). The time between now and 11/7/22 is hereby excluded under the Speedy Trial Act in the interests of justice. The ends of justice served by the exclusion outweigh the best interests of the public and the defendants in a speedy trial because it will enable Mr. Lightfoot to determine whether he still wishes to withdraw his plea, and if so, will enable his new counsel to prepare for trial, including pursuing expert assistance.. (Signed by Judge Cathy Seibel on 9/9/22) (Seibel, Cathy) (Entered: 09/09/2022) |
| 09/16/2022 | 80 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 09/19/2022) |
| 10/27/2022 | 89 | FIRST LETTER MOTION addressed to Judge Cathy Seibel from Jennifer R. Louis-Jeune dated 10/27/22 re: Request to Adjourn Sentencing . Document filed by David McCrone. (Louis-Jeune, Jennifer) (Entered: 10/27/2022) |
| 10/28/2022 | 90 | ORDER granting 89 LETTER MOTION for adjournment of sentencing as to David McCrone (4): Sentencing adjourned to 12/5/22 at 2:15 pm. (Signed by Judge Cathy Seibel on 10/28/22) (Seibel, Cathy) (Entered: 10/28/2022) |
| 11/21/2022 | 105 | LETTER MOTION addressed to Judge Cathy Seibel from Jennifer R. Louis-Jeune dated 11/21/2022 re: David McCrone Sentencing Submission . Document filed by David McCrone. (Attachments: # 1 Exhibit A - Pearson Report REDACTED, # 2 Exhibit B - McCrone Letter, # 3 Exhibit C - Family Letters)(Louis-Jeune, Jennifer) (Entered: 11/21/2022) |
| 11/28/2022 | 106 | SENTENCING SUBMISSION by USA as to David McCrone. (Pertz, Timothy) (Entered: 11/28/2022) |
| 11/30/2022 | 109 | REPORT AND RECOMMENDATION as to David McCrone. Objections to R&R due by 12/14/2022. (Signed by Magistrate Judge Judith C. McCarthy on 11/30/2022) (ap) (Entered: 11/30/2022) |
| 12/02/2022 | 110 | ORDER ACCEPTING PLEA ALLOCUTION as to David McCrone. The Court has reviewed the transcript of the plea allocution in the above titled case, the charging papers, and all other pertinent parts of the record. The Report and Recommendation of the Honorable Judith C. McCarthy, United States Magistrate Judge, dated November 30, 2022, is approved and accepted. The Clerk of the Court is directed to enter the plea. SO ORDERED. (Signed by Judge Cathy Seibel on 12/1/2022)(bw) (Entered: 12/02/2022) |
| 12/05/2022 | | Minute Entry for proceedings held before Judge Cathy Seibel: Sentencing held on 12/5/2022 for David McCrone (4) Count 2. Defendant is present with counsel, Jennifer Louis-Juene, Esq. AUSA Qais Ghafary, Esq. is present The Court imposes a sentence of imprisonment of one hundred two (102) months as to Count Two of Indictment 21 CR 00463 (CS). The Defendant is advised of his right to appeal. The Court imposes a five (5) year term of Supervised Release. $100 Special Assessment. $79,200 Order of Forfeiture signed. No fine. Defendant is remanded into the custody of the United States Marshals Service. See transcript. (Court Reporter Darby Ginsberg) (ap) (Entered: 12/09/2022) |

| 12/08/2022 | 113 | MOTION for Leave to Appeal In Forma Pauperis *by David McCrone*. Document filed by David McCrone. (Louis-Jeune, Jennifer) (Entered: 12/08/2022) |
|---|---|---|
| 12/09/2022 | 114 | Consent Preliminary Order of Forfeiture/Money Judgment as to David McCrone... As a result of the offense charged in Count Two of the Indictment, to which the Defendant pled guilty, a money judgment in the amount of $79,200 in United States currency (the "Money Judgment"), representing the amount of proceeds traceable to the offense charged in Count Two of the Indictment, shall be entered against the Defendant..... (Signed by Judge Cathy Seibel on 12/5/22) [**Certified copies sent to AUSA Alexander J. Wilson.](jbo) (Entered: 12/09/2022) |
| 12/09/2022 | 115 | FILED JUDGMENT IN A CRIMINAL CASE as to David McCrone (4), Pleaded guilty to Count(s) 2, Imprisonment for a total term of One Hundred Two (102) months as to Count Two of Indictment 21 CR 00463 (CS). Defendant is advised of his right to appeal. Supervised release for a term of Five Years. The court makes the following recommendations to the Bureau of Prisons: The Court recommends placement at a facility as close as possible to Conklin, New York as well as mental health and substance abuse treatment. Special Assessment of $100 which is due immediately. (Signed by Judge Cathy Seibel on 12/9/22)(jw) (Entered: 12/09/2022) |
| 12/12/2022 | 118 | MOTION for Medical Treatment . Document filed by David McCrone. (Louis-Jeune, Jennifer) (Entered: 12/12/2022) |
| 12/13/2022 | 119 | ORDER granting in part 118 Motion for Medical Treatment as to David McCrone (4): The Warden or the Medical Director of the Westchester County Jail is hereby ORDERED to SHOW CAUSE in writing, no later than 12/14/22, why the Jail has not complied with the Court's order that inmate David McCrone be provided with glasses. The Government is directed to immediately provide a copy of this text order to the Warden and Medical Director at the Jail. (Signed by Judge Cathy Seibel on 12/13/22) (Seibel, Cathy) (Entered: 12/13/2022) |
| 12/13/2022 | 120 | LETTER by USA as to David McCrone addressed to Judge Cathy Seibel from Jeffrey C. Coffman dated December 13, 2022 re: David McCrone's Optometry Appointment Document filed by USA. (Attachments: # 1 Exhibit Letter from DC Diaz, # 2 Exhibit Letter from Dr. Ulloa)(Coffman, Jeffrey) (Entered: 12/13/2022) |
| 12/16/2022 | 125 | Criminal Notice of Appeal - Form A. Document filed by David McCrone. (bw) (Entered: 12/19/2022) |
| 12/19/2022 | 126 | NOTICE OF APPEAL by David McCrone from 115 Judgment. (tp) (Entered: 12/19/2022) |
| 12/19/2022 | | Appeal Remark as to David McCrone re: 126 Notice of Appeal - Final Judgment. $505.00 Appeal Fee Waived; Attorney CJA. (tp) (Entered: 12/19/2022) |
| 12/19/2022 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to David McCrone to US Court of Appeals re: 126 Notice of Appeal - Final Judgment. (tp) (Entered: 12/19/2022) |
| 12/19/2022 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to David McCrone re: 126 Notice of Appeal - Final Judgment were transmitted to the U.S. Court of Appeals. (tp) (Entered: 12/19/2022) |
| 12/20/2022 | 127 | MOTION for Jennifer R. Louis-Jeune to Withdraw as Attorney . Document filed by David McCrone. (Louis-Jeune, Jennifer) (Entered: 12/20/2022) |
| 12/20/2022 | 128 | ORDER denying without prejudice 127 Motion to Withdraw as Attorney. as to David McCrone (4): Now that a Notice of Appeal has been filed, I am without power to grant |

| | | this application; it has to be made to the Court of Appeals. (Signed by Judge Cathy Seibel on 12/20/22) (Seibel, Cathy) (Entered: 12/20/2022) |
|---|---|---|
| 12/20/2022 | 130 | SEALED DOCUMENT placed in vault. (lnl) (Entered: 12/20/2022) |
| 12/22/2022 | 132 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Pedro Chinnery, Jermaine Lightfoot, David McCrone, Jason Brandt, Stan Jones. Notice is hereby given that an official transcript of a Sentence proceeding held on 11/14/2022 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Ginsberg, Darby) (Entered: 12/22/2022) |
| 12/22/2022 | 133 | TRANSCRIPT of Proceedings as to Pedro Chinnery, Jermaine Lightfoot, David McCrone, Jason Brandt, Stan Jones re: Sentence held on 11/14/2022 before Judge Cathy Seibel. Court Reporter/Transcriber: Darby Ginsberg, (914) 390-4102, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/12/2023. Redacted Transcript Deadline set for 1/23/2023. Release of Transcript Restriction set for 3/22/2023. (Ginsberg, Darby) (Entered: 12/22/2022) |
| 12/22/2022 | 134 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Pedro Chinnery, Jermaine Lightfoot, David McCrone, Jason Brandt, Stan Jones. Notice is hereby given that an official transcript of a Sentence proceeding held on 11/18/2022 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Ginsberg, Darby) (Entered: 12/22/2022) |
| 12/22/2022 | 135 | TRANSCRIPT of Proceedings as to Pedro Chinnery, Jermaine Lightfoot, David McCrone, Jason Brandt, Stan Jones re: Sentence held on 11/18/2022 before Judge Cathy Seibel. Court Reporter/Transcriber: Darby Ginsberg, (914) 390-4102, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/12/2023. Redacted Transcript Deadline set for 1/23/2023. Release of Transcript Restriction set for 3/22/2023. (Ginsberg, Darby) (Entered: 12/22/2022) |

Approved: _____
          JEFFREY COFFMAN/T. JOSIAH PERTZ
          Assistant United States Attorneys

Before:   THE HONORABLE PAUL E. DAVISON          21-MJ-06532
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - X
                                  :    **SEALED COMPLAINT**
UNITED STATES OF AMERICA          :
                                  :    Violations of
     - v. -                       :    21 U.S.C. § 846
                                  :
DAVID McCRONE,                    :    COUNTY     OF     OFFENSE:
          Defendant.              :
                                  :    WESTCHESTER
                                  :
- - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

        MICHAEL C. KELS, being duly sworn, deposes and says that
he is a Special Agent with the Federal Bureau of Investigation
("FBI"), and charges as follows:

### COUNT ONE
(Narcotics Conspiracy)

        1.    In or about June 2021, in the Southern District of
New York and elsewhere, DAVID McCRONE, the defendant, and others
known and unknown, intentionally and knowingly did combine,
conspire, confederate, and agree together and with each other to
violate the narcotics laws of the United States.

        2.    It was a part and an object of the conspiracy that
DAVID McCRONE, the defendant, and others known and unknown, would
and did distribute and possess with the intent to distribute a
controlled substance, in violation of 21 U.S.C. § 841(a)(1).

        3.    The controlled substance that DAVID McCRONE, the
defendant, conspired to distribute and possess with intent to
distribute was 500 grams and more of mixtures and substances
containing a detectable amount of methamphetamine, in violation of
21 U.S.C. § 841(b)(1)(A).

        (Title 21, United States Code, Section 846).

A 9

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4.    I am a Special Agent with the FBI, and I have been involved in the investigation of the above-described offenses. This affidavit is based upon my personal participation in the investigation of this matter, as well as on my conversations with other law enforcement officers and others, and my examination of reports and records.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts I have learned during the investigation. Where the contents of documents or the actions, statements, or conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Overview of the Narcotics Distribution Conspiracy

5.    Since approximately September 2018, the FBI's Hudson Valley Safe Streets Task Force, in cooperation with local and state law enforcement agencies, has been investigating a drug trafficking organization (the "DTO") that distributes narcotics in an around Poughkeepsie, New York and elsewhere. Based on information learned from confidential informants, review of phone records, review of criminal history records, intercepted wire and electronic communications, completion of multiple controlled purchases of narcotics, and the seizure of narcotics, law enforcement has learned that DAVID McCRONE, the defendant, along with others known and unknown, including two individuals who were arrested on or about June 21, 2021 and charged with narcotics trafficking ("CC-1" and "CC-2"), have worked together and with others to distribute methamphetamine and other narcotics.  Based in part on the information below, law enforcement believes that CC-1 has obtained bulk narcotics, including methamphetamine, from CC-2 at an apartment in New Rochelle, New York, and CC-1 then provided narcotics, including methamphetamine, to couriers who transported them to McCRONE, who resides in Broome County, New York.

## Identification of Relevant Cellphones

6.    On or about April 2, 2021, the Honorable Cathy Seibel, United States District Judge in the Southern District of New York, issued an order (the "April 2 Order") pursuant to the provisions of Title III, authorizing the interception and recording of wire and electronic communications of a cellphone with a call number ending in 2751 (the "2751 Number").   On or

about April 30, 2021, Judge Seibel, issued an order (the "April 30 Order") pursuant to the provisions of Title III, authorizing the interception and recording of wire communications, of a cellphone with a call number ending in 9202 (the "9202 Number"). On or about May 28, 2021, Judge Seibel issued an order (the "May 28 Order," and with the April 2 Order and the April 30 Order, the "Orders of Interception") pursuant to the provisions of Title III, authorizing the interception and recording of wire and electronic communications, of the 9202 Number and a cellphone with a call number ending in 5405 (the "5405 Number"). Based on my participation in this investigation, including my conversations with other agents investigating the case, interceptions pursuant to the Orders of Interception, and surveillance, I have learned the following, in substance and in part:

a. CC-1 has used the 2751 Number, the 9202 Number and the 5405 Number. Based on an examination of dozens of recorded calls, law enforcement has identified the same voice on communications intercepted on each of these cellphones, and CC-1's use of the phones is supported by other contextual information including communications intercepted pursuant to the May 28 Order.

b. CC-2 has used a number ending in 3191 (the "3191 Number"), as well as a number ending in 0345 (the "0345 Number"), with which CC-2 has communicated with CC-1. Communications between CC-1 and CC-2 over these phones were intercepted pursuant to the Orders of Interception. Based on their review and comparison of dozens of intercepted calls from the 3191 Number, and more than a dozen calls from the 0345 Number, agents identified the same voice on both the 3191 Number and the 0345 Number. Further, after CC-2's arrest on or about June 21, 2021, agents recovered multiple cellphones from CC-2's person, one of which rang when the agents dialed the 0345 Number, and another of which rang when the agents dialed the 3191 Number.

7. Based on my participation in this investigation, I know that both CC-1 and DAVID McCRONE, the defendant, have spoken to each other using different phone numbers. Based on my review of call records provided by T-Mobile pursuant to the April 30 Order and the May 28 Order, I have learned that CC-1, using the 9202 Number, has been in contact with a phone assigned the call number with a 607 area code, ending in 4392 (the "4392 Number"). Between on or about May 26, 2021 and on or about June 10, 2021, the 9202 Number had approximately 80 contacts with the

4392 Number.  During one call between the 9202 Number and the
4392 Number on or about June 7, 2021, CC-1 refers to the
operator of the 4392 Number as "David."

        8.    Based on my conversation with other agents
investigating this case, I know that agents have identified
DAVID McCRONE, the defendant, as the user of the 4392 Number
based in part on agents' recognition of McCRONE's voice, which
they identify as the same voice on at least one other number
known to be used by McCRONE, including a number with a 607 area
code ending in 6357 (the "6357 Number").  Pursuant to the Orders of
Interception, agents intercepted approximately 26 calls with audio
between CC-1 and the 4392 Number, and approximately 32 calls with
audio between CC-1 and the 6357 Number.  Based on my discussion
with another agent, who reviewed communications with an officer of
the New York State Department of Corrections and Community
Supervision ("DOCCS"), I have learned that, when making outgoing
calls, DOCCS inmates register the names of the individuals they
call and the phone numbers associated with those individuals.  I
have further learned that, as of in or about April 2021, DOCCS
records reflect that an inmate in a DOCCS facility had registered
the 6357 Number to McCRONE.  Based on my review of subscriber
information provided by Sprint, I have learned that the subscriber
of the 6357 Number has the last name "McCrone," with a first name
different from "David." Based on a review of communications
intercepted pursuant to the Orders of Interception, I have learned
that the 6357 Number had a voicemail message stating, in substance
and in part, that the caller had "reached Dave."

        9.    Based in part on discussions with law enforcement
officers who have conducted surveillance of DAVID McCRONE, the
defendant, as well as a review of McCRONE's rap sheet, I have
learned that McCRONE resides at a certain address in Conklin,
New York ("McCRONE's Residence").  On or about June 14, 2021,
the Honorable Judith C. McCarthy, United States Magistrate Judge
for the Southern District of New York, issued a warrant and
order for GPS location data for the 4392 Number (the "June 14
Order").  Based on GPS location data provided by Verizon
pursuant to the June 14 Order, agents have learned that the 4392
Number has pinged in the vicinity of McCRONE's residence
numerous times in the days since the Order was issued.

        10.  Based on my review of subscriber information
provided by T-Mobile and Verizon, I have learned that the 4392
Number, the 3191 Number and the 5405 Number each began service on
or about March 13, 2021.  Based on my training, experience, and
participation in this investigation, I know that individuals

involved in narcotics trafficking may activate new phone lines,
simultaneously or within a short time of one another, to provide
a means of communication regarding narcotics trafficking and in
order to evade law enforcement scrutiny related to phone numbers
previously identified by law enforcement as related to narcotics
trafficking.

<u>Communications in Furtherance of Narcotics Trafficking
Involving McCRONE, CC-1 and CC-2</u>

     11.  Based on my review of communications involving
the 5405 Number and the 3191 Number, both used by CC-1,
intercepted pursuant to the May 28 Order, I have learned the
following, in substance and in part:

     a.  On or about June 9, 2021 at approximately 9:08
p.m., CC-1, using the 5405 Number, made an outgoing call to CC-
2, who was using the 3191 Number.  During that recorded call,
the following conversation took place, in substance and in part:

> CC-1: I've been drinking a little bit but I need
> you to uhm bring me like six eyeglasses
> CC-2: Allright I'ma come
> CC-1: Ya heard me?
> CC-2: Ya ya ya but I'm saying you can't just
> CC-1: I've been drinking.... I got your man's
> shit situated to the side too and I got that
> little two racks for you too
> CC-2: (UI)
> CC-1: Huh?
> CC-2: (UI)
> CC-1: Say what?
> CC-2: How much is it (UI)
> CC-1: Man nothing I already told you
>     ….
> CC-2: (UI) listen I'm gonna tell you to come this
> way because I'm gonna pass you something just
> just come this way
> CC-1: Damn bro bro
> CC-2: grab that and come this way please (UI) bro
> CC-1: Bro you better pass me something too
>     ….
> CC-2: No I'm not. Alright man I'm gonna come bro
> but I got someone coming that's what I'm saying.
> I need, listen, in order for me to give you
> something the person that's pulling up on me I'm
> getting ready to give it to you

CC-1: Alright say less, I'm coming, but I swear,
I swear to god don't have me come up there and
I've been drinking and you don't got nothing for
me

Based on my training, experience and participation in this
investigation, including a review of a 2018 intelligence
report published by the Drug Enforcement Administration
which discusses various code words commonly used by
narcotics traffickers, I believe that "eyeglasses" is a
code word for methamphetamine.  Further, I believe that the
above conversations concerned narcotics trafficking.  In
particular, I believe that CC-1 sought to purchase
narcotics ("six eyeglasses"), and was arranging with CC-2
to meet for the purpose of purchasing narcotics ("I'm gonna
pass you something just just come this way"; "you better
pass me something"), but CC-2 is waiting for CC-2's
supplier to provide CC-2 with narcotics in order to then
provide narcotics to CC-1 ("in order for me to give you
something the person that's pulling up on me I'm getting
ready to give it to you").

     b.   Then, on or about June 9, 2021 at approximately
11:57 p.m., CC-1, using the 5405 Number, received an incoming
call from the 3191 Number. During that recorded call, the
following conversation occurred, in substance and in part:

CC-2: Ummm, I want the Ummm
CC-1: Yo
CC-2: Yo . . . I am in the lobby.
CC-1: Me too
CC-2: Oh, Ok.

Based on my conversation with other law enforcement
officers investigating this case, and geolocation data for
the 5405 Number, I have learned that the cellphone assigned
the 5405 Number was located in the vicinity of a particular
building on Huguenot Street in New Rochelle, New York (the
"Huguenot Building") at approximately 12:13 a.m. on or
about June 10, 2021, not long after the above call.
Accordingly, and in light of the other communications
between CC-1 and CC-2 on or about June 9, 2021, I believe
that CC-1 and CC-2 in fact met to conduct the intended
narcotics transaction described above.

     c.   On or about June 10, 2021 at approximately
12:43 a.m., CC-1, using the 5405 Number, made an outgoing call

to DAVID McCRONE, the defendant, who was using the 4392 Number. During that recorded call, the following conversation took place, in substance and in part:

> McCRONE: Where you been man?
> CC-1: Naa I had left my phone in the car. I had to meet somebody to take care of somethin.
> MCCRONE: Alight. Give her a call man she been tryin to call you.
> CC-1: You said she gettin a room right?
> MCCRONE: Yea.
> CC-1: Alight. I I I I got to go get in the kitchen for you anyway.
> MCCRONE: Alight then she's in the room so.
> CC-1: Alight so I'ma jus go take care of my business. I'll hit her up when I'm done.
> MCCRONE: Yea or tomorrow morning. It doesn't matter.
> CC-1: Yea.
> MCCRONE: Alight jus hit her before so she could uh take care of business. Ya kno?
> CC-1: Yo you kno what's crazy?
> MCCRONE: I want you I want you I want you to stop over and get tha get tha money.
> CC-1: You here me though? You kno what's crazy?
> MCCRONE: Go ahead.
> CC-1: Theres a dude seein my people right now right.
> MCCRONE: Uuuh huh.
> CC-1: U/I I I I went to go get them eyeglasses for you.
> MCCRONE: Yea.
> CC-1: And he and he and he from where you from.
> MCCRONE: No way.
> CC-1: Yea, and he jus grabbed the mother load. Word of mother.

Based on my training, experience and participation in this investigation, I believe that the above conversation between CC-1 and McCRONE refers to a narcotics transaction. In particular, I believe that CC-1 was referencing his transaction with CC-2 minutes earlier ("I had to meet somebody to take care of something"), and after McCRONE tells CC-1 that McCRONE's courier is nearby and looking to contact CC-1 ("Give her a call man she been tryin to call you."; "You said she gettin a room right?"), CC-1 promises to prepare narcotics for McCRONE's courier ("I got to go get in the kitchen for you anyway. . . . I'ma jus go take care of my business. I'll hit her up when I'm done"), and

McCRONE confirms that CC-1 will be paid by the courier ("I want you to stop over and get tha get tha money."). CC-1 then notifies McCRONE that another drug dealer from McCRONE's geographic area ("he from where you from") is purchasing a large amount of narcotics ("he jus grabbed the mother load") from CC-2 ("a dude seein my people right now"), where CC-1 had recently purchased narcotics for McCRONE ("I went to go get them eyeglasses for you").

     d.   On or about June 10, 2021 at approximately 1:08 a.m., CC-1, using the 5405 Number, made an outgoing call to a call number with a 607 area code (the "2460 Number"), used by an unknown female ("McCRONE's Courier-1"). During that recorded call, the following conversation took place, in substance and in part:

> CC-1: Wha what hotel what hotel you at?
> McCRONE's Courier-1: [Hotel-1]
> CC-1: [Hotel-1]
> McCRONE's Courier-1: On um. What's the address here bud?
> CC-1: Hempstead Turnpike?
> McCRONE's Courier-1: Hempstead Turnpike? Umm hold on hun. Hold on I'll jus look it up an tell you right now.
> . . . .
> McCRONE's Courier-1: [Hotel-1] Hicksville. But hold on honey ummm. City center hotel with hold on.
> CC-1: No no no don't worry bout it you too far out. I'ma call you I'ma call you when I'm ready.

Based on my training, experience and participation in this investigation, I believe that CC-1 offered to meet McCRONE's courier (whose phone, like McCRONE's, has a 607 area code, which covers Binghamton, New York) to perform the narcotics transaction discussed above.

     e.   At approximately 3:02 a.m., CC-1, using the 5405 Number, sent two texts to McCRONE, who was using the 4392 Number: "540Adidas," and "6Eyeglasses." Based on my training, experience, and participation in this investigation, I believe that CC-1 texted McCRONE code names and amounts for the narcotics he was providing to the courier.

     f.   At approximately 3:13 a.m., CC-1, using the 5405 Number, made an outgoing call to McCRONE's Courier-1.

During that recorded call, the following conversation occurred, in substance and in part:

>    CC-1: What building you next to? What you see?
>    McCRONE's Courier-1: Ummm the umm [Tire Store-1].
>    CC-1: There's a gas station cross the street from it?
>    McCRONE's Courier-1: Yep. Well it's right in front of me.
>    . . . .
>    McCRONE's Courier-1: OK. I'm in a white vehicle.
>    CC-1: Alight. Oh I see you I see you I seen your lights jus come on.
>    . . .
>    CC-1: Make a left right here. Jus pull over an park.

Based on my training, experience, and participation in this investigation, I believe that, in this conversation, CC-1 directed the courier to a location near Tire Store-1 in order to provide the courier with narcotics, and receive money.

g.    On or about June 10, 2021 at approximately 10:37 a.m., CC-1, using the 5405 Number, received an incoming call from McCRONE, who was using the 4392 number.  During that recorded call, the following conversation occurred, in substance and in part:

>    CC-1: No then the other thing...the other thing is 6 of them.
>    McCRONE: 6 and change
>    CC-1: No 6 of them.
>    McCRONE: Oh aight.
>    CC-1: You know what I'm talking about....the eyeglasses .
>    McCRONE: I'll see when it gets here
>    CC-1: The eyeglasses....man

Based on my training, experience, and participation in this investigation, I believe that, in this conversation, CC-1 is communicating to McCRONE that the courier will be carrying a certain quantity of narcotics to McCRONE ("6 of them"; "the eyeglasses").

h.    Based on my conversation with other law enforcement officers involved in this investigation, and my review of surveillance logs, I have learned that, on or about June 10, 2021 at approximately 11 a.m., law enforcement observed a white

Ford Escape with a particular license plate (the "White Ford") in the vicinity of Hotel-1 in Hicksville, New York. Three individuals came out of Hotel-1 and entered the White Ford, after loading the vehicle with a shopping bag and a black suitcase. At approximately 4:20 p.m., law enforcement observed the White Ford at a location in Binghamton, New York, where another individual entered the vehicle – based on a review of a photo in a law enforcement database and participation in this investigation, law enforcement recognized this individual as McCRONE. With McCRONE as a passenger, the White Ford then arrived outside McCRONE's residence.[1] Law enforcement reviewed rental records for the White Ford and learned that the vehicle had been rented by Driver-1. Based on my review of subscriber information provided by Verizon, I have learned that Driver-1 is also the subscriber of the 4392 Number, which is used by McCRONE.

      i.    On or about June 21, 2021 at approximately 1:56 p.m., CC-1, using the 5405 Number, made an outgoing call to McCRONE, who was using the 4392 Number. During that recorded call, the following conversation occurred, in substance and in part:

> McCRONE: I gotcha...I got some things with the blues man...I gotta talk you.
> CC-1: Bad news?
> McCRONE: Yeah.
> CC-1: You aint letting nobody call you on your jack, and talk about that shit, right?
> McCRONE: Nah
> CC-1: Motherfuckers doin..they,they gotta take it easy with them shits.
>
> Then, at approximately 2:22 p.m., CC-1, using the 5405 Number, made an outgoing call to McCRONE, who was using the 4392 Number. During that recorded call, the following conversation occurred, in substance and in part:
>
> McCRONE: nah, he's saying it wan't even that J, it wasn't even that, it's not what it says it is
> CC-1: oh
> McCRONE: see what I'm sayin?
> CC-1: yeah
> ...

[1] McCrone, who is on parole in New York State, reported this location as his home address to his parole officer.

McCRONE: so, really no harm no foul. Just gonna
straighten it out and get it all back
CC-1: which ones though?
McCRONE: you know
CC-1: oh, alright alright alright just that one?
McCRONE: huh?
CC-1: just, just, just that, just the ones you said
earlier Just those?
McCRONE: yeah
...

CC-1: I know people who have been um messin with them
and they have no issues. You know what I'm sayin.
That's why i was like
McCRONE: right
CC-1: yeah, they ain't had no
CC-1: cause usually, them shits is triple then what i
told you. you understand where I'm comin from
McCRONE: yeah
CC-1: yeah so, that's why i think they knew. you know
what i mean? because its imposibly to do that to that
McCRONE: right but, like i said were in the blind so
we straight
CC-1: yeah. Um now how bout the um, yellow
McCRONE: they just started rollin, just started
CC-1: what about the yellows
McCRONE: I still got them
CC-1: but, they happy with those?
McCRONE: yeah I mean yeah I mean haven't had no issues
at all.
CC-1: that's what I'm sayin
McCRONE: the issue came in. what what what was uh,
printed
CC-1: alright (UI) so, so, so the yellows your gonna
keep and the others are going to come back?
McCRONE: yeah

Based on my training, experience and participation in this
investigation, I believe that, in the above conversations on
or about June 21, 2021, McCRONE and CC-1 were discussing a
narcotics transaction.  In particular, I believe McCRONE was
expressing that some of the narcotics that CC-1 had provided
were received badly by McCRONE's customers, perhaps because
the pills contained substances that were not anticipated by
McCRONE ("I got some things with the blues man"; "it's not
what it says it is").  McCRONE confirms to CC-1 that McCRONE

will keep some of the narcotics CC-1 had provided ("what about the yellows"; "I still got them").

### The June 21, 2021 Search and Seizure

12.   Based in part on communications and geolocation data intercepted pursuant to the Orders of Interception, as well as a review of rental records and surveillance footage provided by the Huguenot Building management, law enforcement determined that CC-1 and CC-2 were meeting in a particular apartment in the Huguenot Building (the "Huguenot Apartment"). For instance:

a.   Based on a review of surveillance footage from the Huguenot Building, agents observed CC-1, as well as CC-2, getting on or off the elevator on the floor of the Huguenot Apartment multiple times over the past several weeks.

b.   Further, based on rental records provided by the Huguenot Building management, I have learned that the Huguenot Apartment is registered in the name of a certain individual ("Tenant-1").   Based on communications and geolocation data intercepted pursuant to the Orders of Interception, I know that, on or about June 2, 2021, at approximately 12:24 p.m., CC-1 called CC-2 from inside the Huguenot Building.   On that recorded call, a background voice was overheard having a conversation with CC-2, and the background voice addressed CC-2 as "Mr. [last name of Tenant-1]."

13.   On or about June 18, 2021, the Honorable Judith C. McCarthy, United States Magistrate Judge for the Southern District of New York, issued a search warrant the Huguenot Apartment.   On or about the late afternoon of June 21, 2021, law enforcement executed a search of the Huguenot Apartment pursuant to the warrant, in which I participated.   Based on my observations during the search, as well as my conversations with other law enforcement officers who were present for the search, I have learned the following, in substance and in part:

a.   The Huguenot Apartment contained significant quantities of what I and the other officers recognized based on training and experience to be narcotics.   Most prominent were several containers of a white, chunky, crystalline substance that I and other officers recognized based on training, experience and participation in this investigation as methamphetamine, and which field tested positive for methamphetamine.   The total weight of the substance containing methamphetamine found in the apartment is approximately 39 kilograms.

b.   Other substances in the apartment which law enforcement recognized based on training and experience to be narcotics included multiple bags of yellow and blue pills, packages of what appeared to be marijuana edibles, metal cans of one unidentified liquid substance, several vacuum-sealed packages of a substance that field tested positive for fentanyl, and at least one bag of another tan, chunky substance that I believe based on training and experience to be heroin.

c.   Also present in the Huguenot Apartment were other tools used to process and package narcotics, including scales and vacuum sealers.  The apartment also contained other items that I know based on training and experience are often found in premises used to process and store narcotics, including a handgun magazine loaded with 9mm ammunition, and hundreds of thousands of dollars in cash, packed into such locations as a footlocker and a cloth grocery bag.  The apartment had little furniture.

d.   Law enforcement recovered several different identification cards in the apartment, each bearing a different name and a photo of what appears to be the same individual.  Based on a comparison with a photo in a law enforcement database, I recognize the individual on each card to be CC-2.

14. Based on my conversations with other law enforcement officers who participated in this investigation, I have learned the following, in substance and in part:

a.   Based on geolocation data provided pursuant to the Orders of Interception, agents have learned that, at approximately 3:30 p.m. on or about June 21, 2021, GPS tracking data for a phone used by CC-1 showed the phone inside the Huguenot Building.  Several hours later, CC-1 emerged from the lobby, along with an individual later identified as CC-2.  CC-2 was carrying a bag.

b.   Shortly after CC-1 stepped outside, CC-1 appeared to spot law enforcement, which was surveilling the Huguenot Building a short distance from the entrance.  CC-1 fled on foot.  Law enforcement pursued CC-1 and apprehended him a short distance away.  CC-2 fled in the opposite direction as CC-1.  Law enforcement apprehended CC-2 a short distance away, at which point CC-2 no longer had the bag he had been carrying. Law enforcement later recovered the bag, which it found to contain a substance that officers believed based on training and experience contained PCP.  In a post-arrest Mirandized interview, CC-2 acknowledged, in

substance and in part, that the bag contained PCP.

    WHEREFORE, the deponent respectfully requests that a warrant
be issued for the arrest of DAVID McCRONE, the defendant, and that
he be imprisoned or bailed, as the case may be.


                              /s/ Michael C. Kels (by PED)(credentials inspected)(via Microsoft Teams)
                              MICHAEL C. KELS
                              Special Agent
                              Federal Bureau of Investigation


Sworn to me through the transmission of this
Complaint by reliable electronic means, pursuant to
Federal Rule of Criminal Procedure 4.1,

Date: 6/25/21


_____
THE HONORABLE PAUL E. DAVISON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

A 22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X
                                   :
UNITED STATES OF AMERICA           :        **INDICTMENT**
                                   :
    - v. -                         :        21 Cr.  00463
                                   :
PEDRO CHINNERY,                    :
JERMAINE LIGHTFOOT,                :
STAN JONES,                        :
DAVID McCRONE, and                 :
JASON BRANDT,                      :
                Defendants.        :
- - - - - - - - - - - - - - - - X

## COUNT ONE
(Conspiracy to Distribute Cocaine)

The Grand Jury charges:

1.    From at least in or about 2017 up to and
including in or about June 2021, in the Southern District of New
York and elsewhere, PEDRO CHINNERY, JERMAINE LIGHTFOOT, and
JASON BRANDT, the defendants, and others known and unknown,
intentionally and knowingly did combine, conspire, confederate,
and agree together and with each other to violate the narcotics
laws of the United States.

2.    It was a part and an object of the conspiracy
that PEDRO CHINNERY, JERMAINE LIGHTFOOT, and JASON BRANDT, the
defendants, and others known and unknown, would and did
distribute and possess with intent to distribute a controlled
substance, in violation of 21 U.S.C. § 841(a)(1).

3.    The controlled substance that PEDRO CHINNERY,
JERMAINE LIGHTFOOT, and JASON BRANDT, the defendants, conspired

A 23

to distribute and possess with intent to distribute was 5
kilograms and more of mixtures and substances containing a
detectable amount of cocaine, in violation of 21 U.S.C.
§ 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

**COUNT TWO**
(Conspiracy to Distribute Methamphetamine)

The Grand Jury further charges:

4.     From at least in or about May 2021, up to and
including in or about June 2021, in the Southern District of New
York and elsewhere, JERMAINE LIGHTFOOT, STANLEY JONES and DAVID
McCRONE, the defendants, and others known and unknown,
intentionally and knowingly did combine, conspire, confederate,
and agree together and with each other to violate the narcotics
laws of the United States.

5.     It was a part and an object of the conspiracy
that JERMAINE LIGHTFOOT, STANLEY JONES and DAVID McCRONE, the
defendants, and others known and unknown, would and did
distribute and possess with intent to distribute a controlled
substance, in violation of 21 U.S.C. § 841(a)(1).

6.     The controlled substance that JERMAINE LIGHTFOOT,
STANLEY JONES and DAVID McCRONE, the defendants, conspired to
distribute and possess with intent to distribute was 500 grams
and more of mixtures and substances containing a detectable

amount of methamphetamine, its salts, isomers, and salts of its isomers, in violation of 21 U.S.C. § 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

### FORFEITURE ALLEGATION

7.  As a result of committing the offense alleged in Count One of this Indictment, PEDRO CHINNERY, JERMAINE LIGHTFOOT, and JASON BRANDT, the defendants, shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853, any and all property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of said offense and any and all property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

8.  As a result of committing the offense alleged in Count Two of this Indictment, JERMAINE LIGHTFOOT, STANLEY JONES and DAVID McCRONE, the defendants, shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853, any and all property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of said offense and any and all property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, said offense, including but not limited to a sum of money in

United States currency representing the amount of proceeds traceable to the commission of said offense.

### Substitute Assets Provision

9.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third person;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 21, United States Code, Section 853.)

_____
FOREPERSON

_____
AUDREY STRAUSS
United States Attorney

**A 26**

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

v.

**PEDRO CHINNERY,**
**JERMAINE LIGHTFOOT,**
**STANLEY JONES,**
**DAVID McCRONE, and**
**JASON BRANDT,**

**Defendants.**

### INDICTMENT

21 Cr. 00463

(21 U.S.C. § 846.)

AUDREY STRAUSS
United States Attorney

Foreperson

A 27



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

United States District Courthouse
300 Quarropas Street
White Plains, New York 10601

May 10, 2022

**By Email**
Jennifer R. Louis-Jeune, Esq.
52 Duane Street, 7th Floor
New York, New York 10007
JENNIFER@JLJLAW.COM

Re: *United States v. David McCrone*, 21 Cr. 463 (CS)

Dear Ms. Louis-Jeune:

On the understandings specified below, the Office of the United States Attorney for the Southern District of New York ("this Office") will accept a guilty plea from David McCrone ("the defendant") to Count Two of the above-referenced Indictment ("the Indictment").

Count Two charges the defendant with conspiring, from at least in or about May 2021, up to and including in or about June 2021, to distribute and possess with the intent to distribute 50 grams and more of mixtures and substances containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B).[1]  Count Two carries a maximum term of imprisonment of 40 years; a mandatory minimum term of imprisonment of five years; a maximum term of supervised release of life; a mandatory minimum term of supervised release of four years; a maximum fine, pursuant to Title 21, United States Code, Section 841(b)(1)(B) and Title 18, United States Code, Section 3571, of the greatest of $5,000,000 or twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; and a $100 mandatory special assessment.

In consideration of the defendant's plea to the above offense, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations, if any, as to which this Office cannot, and does not, make any agreement) for conspiring to distribute methamphetamine from in or about May 2021 up to and including in or about June 2021, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a

---

[1] The Indictment charges the defendant with conspiring to distribute 500 grams and more of mixtures and substances containing a detectable amount of methamphetamine, thereby triggering the enhanced sentencing provisions of Title 21, United States Code, Section 841(b)(1)(A).  Under the terms of this Agreement, however, the Government will accept a guilty plea to the lesser included offense of conspiring to distribute 50 grams and more of mixtures and substances containing a detectable amount of methamphetamine.  Accordingly, the Government and the defendant agree that the applicable penalties are those set forth in Title 21, United States Code, Section 841(b)(1)(B).

prosecution pursuant to 18 U.S.C. §§ 1961 *et seq.* In addition, at the time of sentencing, the Government will move to dismiss any open Count(s) against the defendant. The defendant agrees that with respect to any and all dismissed charges he is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

The defendant hereby admits the forfeiture allegation with respect to Count Two of the Indictment and agrees to forfeit to the United States, pursuant to Title 21, United States Code, Section 853(p): a sum of money equal to $79,200 in United States currency, representing the proceeds traceable to the commission of said offense (the "Money Judgment"). It is further understood that any forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture.

In consideration of the foregoing and pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 6B1.4, the parties hereby stipulate to the following:

A. Offense Level

1. The applicable Guidelines manual is the November 1, 2021, edition.

2. The Guideline applicable to the offense charged in Count Two is U.S.S.G. § 2D1.1.

3. Pursuant to U.S.S.G. §§ 2D1.1(a)(5) and (c)(3), because the offense involved at least 5 kilograms but less than 15 kilograms of methamphetamine, the base offense level is 34.

4. Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, the Government will move at sentencing for an additional one-level reduction, pursuant to U.S.S.G. § 3E1.1(b), provided the defendant gives timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

In accordance with the above, the applicable Guidelines offense level is 31.

B. Criminal History Category

Based upon the information now available to this Office (including representations by the defense), the defendant has 6 criminal history points, calculated as follows:

1. On or about June 6, 2002, the defendant was convicted after trial in Broome County Court of two counts of robbery in the second degree, in violation of N.Y.P.L. § 160.10(2b). On or about July 25, 2002, the defendant was sentenced to 10 years' imprisonment on both counts, to run consecutively. Pursuant to U.S.S.G. §§ 4A1.1(a) and 4A1.2(e), the defendant receives three

criminal history points for this conviction, and, pursuant to U.S.S.G. § 4A1.1(e), because the second count of robbery in the second degree was a crime of violence that was counted as a single sentence with the first count, the defendant receives an additional one point, for a total of four points.

2.  On or about July 6, 2001, the defendant was convicted in Binghamton City Court of criminal possession of a controlled substance in the seventh degree, in violation of N.Y. Penal Law § 220.03, a misdemeanor.  On or about July 6, 2001, the defendant was sentenced to a conditional discharge.  Pursuant to U.S.S.G. § 4A1.2(e)(3), the defendant receives zero criminal history points for this conviction.

3.  On or about September 3, 1997, the defendant was convicted in Broome County Court of criminal sale of a controlled substance in the fifth degree, in violation of N.Y. Penal Law § 220.31, a felony.  On or about September 3, 1997, the defendant was sentenced to a term of incarceration of three to six years.  Pursuant to U.S.S.G. § 4A1.2(e)(3), the defendant receives zero criminal history points for this conviction.

4.  On or about January 5, 1993, the defendant was convicted in Binghamton City Court of criminal possession of a controlled substance in the seventh degree, in violation of N.Y. Penal Law § 220.03, a misdemeanor.  On or about January 5, 1993, the defendant was sentenced to a term of incarceration of 90 days.  Pursuant to U.S.S.G. § 4A1.2(e)(3), the defendant receives zero criminal history points for this conviction.

5.  On or about January 5, 1993, the defendant was convicted in Binghamton City Court of criminal mischief, in violation of N.Y. Penal Law § 145.00(1), a misdemeanor.  On or about January 5, 1993, the defendant was sentenced to a term of incarceration of 90 days.  Pursuant to U.S.S.G. § 4A1.2(e)(3), the defendant receives zero criminal history points for this conviction.

6.  On or about March 21, 1991, the defendant was convicted in Broome County Court of burglary in the third degree, in violation of N.Y. Penal Law § 140.20, a felony.  On or about March 21, 1991, the defendant was sentenced to five years' probation.  Pursuant to U.S.S.G. § 4A1.2(e)(3), the defendant receives zero criminal history points for this conviction.

7.  On or about April 1, 1991, the defendant was convicted in Johnson City Village Court of assault in the third degree, in violation of N.Y. Penal Law § 120.00(1), a misdemeanor.  On or about April 1, 1991, the defendant was sentenced to a term of imprisonment of one year. Pursuant to U.S.S.G. § 4A1.2(e)(3), the defendant receives zero criminal history points for this conviction.

8.  Pursuant to U.S.S.G. § 4A1.1(d), because the defendant committed the instant offense while on parole for his conviction for robbery in the second degree, in violation of N.Y.P.L. § 160.10(2b), the defendant receives an additional two criminal history points.

In accordance with the above, the defendant's Criminal History Category is III.

C. Sentencing Range

Based upon the calculations set forth above, the defendant's stipulated Guidelines range is 135-168 months' imprisonment (the "Stipulated Guidelines Range"). In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At Guidelines level 31, the applicable fine range is $30,000 to $5,000,000.

The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party in any way suggest that the Probation Office or the Court consider such a departure or adjustment under the Guidelines.

The parties agree that either party may seek a sentence outside of the Stipulated Guidelines Range based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

Except as provided in any written Proffer Agreement(s) that may have been entered into between this Office and the defendant, nothing in this Agreement limits the right of the parties (i) to present to the Probation Office or the Court any facts relevant to sentencing; (ii) to make any arguments regarding where within the Stipulated Guidelines Range (or such other range as the Court may determine) the defendant should be sentenced and regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a); (iii) to seek an appropriately adjusted Guidelines range if it is determined based upon new information that the defendant's criminal history category is different from that set forth above; and (iv) to seek an appropriately adjusted Guidelines range or mandatory minimum term of imprisonment if it is subsequently determined that the defendant qualifies as a career offender under U.S.S.G. § 4B1.1. Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, regardless of any stipulation set forth above, if the defendant fails clearly to demonstrate acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence. Similarly, nothing in this Agreement limits the right of the Government to seek an enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.1, regardless of any stipulation set forth above, should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this Agreement.

It is understood that pursuant to U.S.S.G. § 6B1.4(d), neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, or contemplates any sentence outside of the stipulated Guidelines range, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. The defendant acknowledges that the defendant's entry of a guilty plea to the charged offenses

authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw the defendant's plea of guilty should the sentence imposed by the Court be outside the Guidelines range set forth above.

It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Guidelines Range of 135 to 168 months' imprisonment and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines Range. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation. The parties agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case. The defendant further agrees not to appeal or bring a collateral challenge of any term of supervised release that is less than or equal to the statutory maximum. The defendant also agrees not to appeal or bring a collateral challenge of any fine that is less than or equal to $5,000,000, and the Government agrees not to appeal or bring a collateral challenge of any fine that is greater than or equal to $30,000. The defendant also agrees not to appeal or bring a collateral challenge of any forfeiture amount that is less than or equal to $79,200, and the Government agrees not to appeal or bring a collateral challenge of any forfeiture amount that is greater than or equal to $79,200. The defendant also agrees not to appeal or bring a collateral challenge of any special assessment that is less than or equal to $100. Notwithstanding the foregoing, nothing in this paragraph shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise. Rather, it is expressly agreed that the defendant reserves those rights.

The defendant hereby acknowledges that the defendant has accepted this Agreement and decided to plead guilty because the defendant is in fact guilty. By entering this plea of guilty, the defendant waives any and all right to withdraw the defendant's plea or to attack the defendant's conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, or impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

The defendant recognizes that, if the defendant is not a citizen of the United States, the defendant's guilty plea and conviction make it very likely that the defendant's removal from the United States is presumptively mandatory and that, at a minimum, the defendant is at risk of being removed or suffering other adverse immigration consequences. If the defendant is a naturalized citizen of the United States, the defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status. Under federal law, an individual may be subject

to denaturalization and removal if the defendant's naturalization was procured by concealment of a material fact or by willful misrepresentation, or otherwise illegally procured. The defendant acknowledges that the defendant has discussed the possible immigration consequences (including removal or denaturalization) of the defendant's guilty plea and conviction with defense counsel. The defendant affirms that the defendant wants to plead guilty regardless of any immigration or denaturalization consequences that may result from the guilty plea and conviction, even if those consequences include denaturalization and/or removal from the United States. The defendant understands that denaturalization and other immigration consequences are typically the subject of a separate proceeding, and the defendant understands that no one, including the defendant's attorney or the District Court, can predict with certainty the effect of the defendant's conviction on the defendant's immigration or naturalization status. It is agreed that the defendant will have no right to withdraw the defendant's guilty plea based on any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from the guilty plea and conviction. It is further agreed that the defendant will not challenge the defendant's conviction or sentence on direct appeal, or through litigation under Title 28, United States Code, Section 2255 and/or Section 2241, on the basis of any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from his guilty plea and conviction.

It is further agreed that should the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is further understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office.

Apart from any written Proffer Agreement(s) that may have been entered into between this Office and defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

The parties understand that this Agreement reflects the special facts of this case and is not intended as precedent for other cases.

Very truly yours,

DAMIAN WILLIAMS
United States Attorney

By:    /s/ Josiah Pertz
Jeffrey C. Coffman/T. Josiah Pertz
Assistant United States Attorneys
(914) 993-1940/1966

APPROVED:

Perry A. Carbone
Chief, White Plains Division

AGREED AND CONSENTED TO:

_____        _____
DAVID McCRONE                                        DATE

APPROVED:

_____        _____
JENNIFER LOUIS-JEUNE                          DATE
Attorney for DAVID McCRONE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————x
UNITED STATES OF AMERICA

        v.                    21 CR 463 (CS)

DAVID McCRONE,

                Defendant.
————————————————————————x
                U.S. Courthouse
                White Plains, N. Y.
                August 4, 2022
                12:00 a.m.


Guilty Plea Before:   HON. JUDITH C. McCARTHY,
                     United States Magistrate Judge


APPEARANCES

UNITED STATES ATTORNEY'S OFFICE
SOUTHERN DISTRICT OF NEW YORK
One St. Andrew's Plaza
New York, N.Y.  10007
BY:  T. JOSIAH PERTZ
     JEFFREY COFFMAN
Assistant United States Attorneys

JENNIFER R. LOUIS-JEUNE, Esq.
52 Duane Street, 7th Floor
New York, N.Y.  10007
Attorney for Defendant




SUE GHORAYEB, R.P.R., C.S.R.
Official Court Reporter

1              THE COURT:  Good afternoon.

2              Everybody can be seated.

3              THE CLERK:  In the matter of the United States of

4    America v. David McCrone.  Counsel, please state your

5    appearances for the record.

6              MR. PERTZ:  Josiah Pertz and Jeffrey Coffman for the

7    United States.  Good afternoon, Your Honor.

8              THE COURT:  Good afternoon, Mr. Pertz and Mr.

9    Coffman.

10             MR. COFFMAN:  Good afternoon, Your Honor.

11             MS. LOUIS-JEUNE:  Good afternoon, Your Honor.

12   Jennifer Louis-Jeune for David McCrone.

13             THE COURT:  Good afternoon, Ms. Louis-Jeune.  I hope

14   you're doing well.  It's been a while.

15             MS. LOUIS-JEUNE:  Thank you.

16             THE COURT:  And good afternoon, Mr. McCrone.

17             THE DEFENDANT:  Good afternoon, Judge.

18             THE COURT:  Okay.  What are we here for, Mr. Pertz?

19             MR. PERTZ:  This is a change of plea hearing for Mr.

20   McCrone.  The Government understands that he wishes to plead

21   guilty pursuant to a Plea Agreement.

22             THE COURT:  Thank you.  Ms. Louis-Jeune, is that

23   correct?

24             MS. LOUIS-JEUNE:  Yes, Your Honor.

25             THE COURT:  Okay.  Mr. McCrone, I'm going to allow

Sue Ghorayeb,  Official Court Reporter

1    you to remain seated until we get to the allocution part of

2    this proceeding so that it's easier for the court reporter to

3    hear you.  Okay?

4                 THE DEFENDANT:  Yes, ma'am.

5                 THE COURT:  I want to advise you this is not a

6    trial.  It's my understanding that you've decided to enter a

7    guilty plea.  This proceeding is for the purpose of ensuring

8    that you are aware of your rights in connection with your plea

9    and that any waiver of those rights is knowing and voluntary

10   prior to entering your plea.

11                If at any time you do not hear or understand what I

12   say to you, please interrupt me, so that I can repeat and

13   explain what I've said.  If at any time you want to confer

14   with your attorney regarding anything I said, please

15   interrupt me so that you can do that.  Do you understand?

16                THE DEFENDANT:  Yes, ma'am.

17                THE COURT:  I want to advise you that you have the

18   right to be represented by counsel throughout the entire case

19   and you may consult with your attorney at any stage of this

20   proceeding.  You also have the right to remain silent.  Any

21   statement that you do make may be used against you.  You have

22   the right to remain silent even if you've already made

23   statements to law enforcement officers.  Do you understand?

24                THE DEFENDANT:  Yes, ma'am.

25                THE COURT:  Ms. Hummel, could you please place Mr.

1    McCrone under oath or affirmation.

2           THE CLERK:  Please raise your right hand.

3    D A V I D   M c C R O N E, Defendant,

4    having first been duly sworn, was examined by the Court and

5    testified as follows:

6           THE CLERK:   Thank you.

7           THE COURT:   So, you're under oath now, Mr. McCrone.

8    It's important for you to understand that if you knowingly

9    make a false statement during these proceedings, you could be

10   subject to prosecution for the crime of perjury or for making

11   a false statement to the Court, and you could face a

12   punishment up to five years' imprisonment and a $250,000 fine

13   for committing such a crime.  Such punishment will be separate

14   and apart from any sentence you may be facing on the crime

15   charged in the Felony Indictment.  Do you understand that?

16          THE DEFENDANT:  Yes, ma'am.

17          THE COURT:  What is your full name?

18          THE DEFENDANT:  David John McCrone.

19          THE COURT:  How old are you?

20          THE DEFENDANT:  Fifty-two.

21          THE COURT:  Are you a U.S. citizen?

22          THE DEFENDANT:  Yes, I am.

23          THE COURT:  How far did you go in school?

24          THE DEFENDANT:  Eleventh Grade.

25          THE COURT:  Are you currently or have you been

1    recently under the care of a doctor or a psychiatrist for any
2    reason?
3              THE DEFENDANT:  No.
4              THE COURT:  Have you taken any mind-altering drugs,
5    medicines or pills, or consumed any alcohol in the last 24
6    hours?
7              THE DEFENDANT:  No.
8              THE COURT:  Have you ever been hospitalized or
9    treated for alcoholism or drug addiction?
10             THE DEFENDANT:  No.
11             THE COURT:  Is your mind clear today?
12             THE DEFENDANT:  Yes.
13             THE COURT:  Do you understand what's happening at
14   this proceeding?
15             THE DEFENDANT:  Yes.
16             THE COURT:  Does either counsel have any objection
17   to the Defendant's competence to plead at this time?
18             MR. PERTZ:  No, Your Honor.
19             MS. LOUIS-JEUNE:  No, Your Honor.
20             THE COURT:  So, Mr. McCrone, this proceeding is
21   called a plea allocution.  I want you to understand that you
22   have an absolute right to have this plea allocution conducted
23   before a United States District Judge.  It is the District
24   Judge who will impose the sentence in this case.
25             If you consent, then I will conduct the plea

1       allocution and I will then make a report to the District

2       Judge in which I will recommend whether or not the District

3       Judge should accept the plea of guilty.  I will make that

4       recommendation based on the information that is brought out

5       during today's proceedings.

6               It is important for you to understand that the

7       Court will not accept your plea unless the Court is satisfied

8       that you fully understand all of your rights and that you are

9       in fact guilty.  Do you understand that?

10              THE DEFENDANT:  Yes, ma'am.

11              THE COURT:  Do you understand that you have an

12      absolute right to have this plea allocution conducted before a

13      United States District Judge?

14              THE DEFENDANT:  Yes, ma'am.

15              THE COURT:  Is it your wish that I conduct the plea

16      allocution?

17              THE DEFENDANT:  Yes, ma'am.

18              THE COURT:  Counsel, did your client sign a Consent

19      to Proceed Before a United States Magistrate Judge on a Felony

20      Plea Allocution?

21              MS. LOUIS-JEUNE:  Yes, Your Honor.

22              THE COURT:  Ms. Hummel, could you have the Defendant

23      identify his signature on the form.

24              THE CLERK:  Mr. McCrone, I have before me the

25      "Consent to Proceed Before a United States Magistrate Judge on

1    a Felony Plea Allocution" form, which you've signed and dated

2    today, August 4th, 2022.  Is that your signature?

3              THE DEFENDANT:  Yes, ma'am.

4              THE CLERK:  And before signing this form, did you

5    have a chance to read it and review it with your attorney?

6              THE DEFENDANT:  Yes, ma'am.

7              THE CLERK:  Thank you.

8              THE COURT:  Thank you, Ms. Hummel.

9              THE CLERK:  You're welcome.

10             THE COURT:  So, I have before me the "Consent to

11   Proceed Before a United States Magistrate Judge on a Felony

12   Plea Allocution" that you've signed.  What this form says is

13   that knowing you have the right to have the plea taken by a

14   United States District Judge, you are agreeing to have the

15   plea taken by me, a United States Magistrate Judge.  Is that

16   correct?

17             THE DEFENDANT:  Yes, ma'am.

18             THE COURT:  Before you signed the form, did your

19   lawyer explain it to you?

20             THE DEFENDANT:  Yes, ma'am.

21             THE COURT:  Did anyone threaten or coerce you or

22   promise you anything in order to get you to sign the consent

23   form?

24             THE DEFENDANT:  No, ma'am.

25             THE COURT:  Did you sign the form freely and

1    voluntarily?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  Counsel, do either of you know of any

4    reason why the waiver and consent to proceed with this plea

5    allocution before a United States Magistrate Judge should not

6    be accepted?

7              MR. PERTZ:  No.

8              MS. LOUIS-JEUNE:  No, Your Honor.

9              THE COURT:  I find that the Defendant, David

10   McCrone, is fully competent and understands the proceedings

11   before him.  I also find he's capable of waiving his right to

12   appear before a United States District Judge in order to enter

13   his guilty plea, and I therefore accept the consent form,

14   which has been signed and is now part of the court record.

15             The consent form is marked as Court Exhibit 1 and

16   will remain in the court file.

17             Mr. McCrone, I've been informed that you wish to

18   change your plea and to enter a plea of guilty as to certain

19   charges; is that correct?

20             THE DEFENDANT:  This is correct.

21             THE COURT:  Before deciding whether to accept your

22   guilty plea, I'm going to ask you certain questions.  It's

23   very important that you answer these questions honestly and

24   completely.

25             The purpose of these proceedings is to make sure

1    that you understand your rights, to decide whether you are
2    pleading guilty of your own free will, and to make sure that
3    you are pleading guilty because you are guilty and not for
4    some other reason. Do you understand what I'm saying?
5                THE DEFENDANT: Yes, ma'am.
6                THE COURT: If you don't understand any of the
7    questions or if you want at any time to consult with your
8    lawyer, please let me know, because it's important that you
9    understand every question before you answer it. Okay?
10               THE DEFENDANT: Yes, ma'am.
11               THE COURT: So, I have a copy of the Indictment
12   containing the charges against you. The Indictment is a
13   two-count Indictment. You are charged in Count Two of that
14   Indictment, and the Indictment charges you with conspiring to
15   distribute 500 grams and more of mixtures and substances
16   containing a detectable amount of methamphetamine, thereby
17   triggering the enhanced sentencing provisions of Title 21,
18   United States Code, Section 841(b)(1)(A).
19               Under the terms of the Plea Agreement, however, the
20   Government is going to accept a plea of guilty to the lesser
21   included offense of conspiring to distribute 50 grams and
22   more of mixtures and substances containing a detectable
23   amount of methamphetamine. Therefore, the Government and the
24   Defendant agree that the applicable penalties are those set
25   forth in Title 21, United States Code, Section 841(b)(1)(B).

1              Do you understand that?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:   Okay.  Have you received a copy of the

4     Indictment?

5              THE DEFENDANT:  Yes, ma'am.

6              THE COURT:   Have you read it?

7              THE DEFENDANT:  Yes, ma'am.

8              THE COURT:   Do you understand what it says?

9              THE DEFENDANT:  Yes, ma'am.

10             THE COURT:   Do you want me to read it to you in open

11    court?

12             THE DEFENDANT:  No, ma'am.

13             THE COURT:   Have you had time to talk to your

14    attorney about these charges and about how you wish to plead?

15             THE DEFENDANT:  Yes, ma'am.

16             THE COURT:   Are you satisfied — and have you

17    discussed with your attorney the charges against you,

18    including the charges you intend to plead guilty to, as well

19    as any other charges the Government may have made in this

20    case?

21             THE DEFENDANT:  Yes, ma'am.

22             THE COURT:   Has your attorney told you the

23    consequences of pleading guilty?

24             THE DEFENDANT:  Yes, ma'am.

25             THE COURT:   Are you satisfied with your attorney's

1    representation of you?

2                    THE DEFENDANT:  Yes, ma'am.

3                    THE COURT:  Have you told your attorney everything

4    you know about this case?

5                    THE DEFENDANT:  Yes, ma'am.

6                    THE COURT:  Ms. Hummel, do you have the original

7    Plea Agreement?

8                    THE CLERK:  I do, Judge.

9                    THE COURT:  Okay.  The original Plea Agreement is

10   going to be marked as a Government exhibit and the original

11   Plea Agreement will remain in the custody of the Government's

12   attorney.

13                   Ms. Hummel, could you please have the Defendant

14   identify his signature on the last page of the Agreement.

15                   THE CLERK:  Mr. McCrone, I have before me the Plea

16   Agreement in this case, which is dated May 10th, 2022, and

17   which you've signed and dated today, August 4th, 2022.  Is

18   that your signature?

19                   THE DEFENDANT:  Yes, ma'am.

20                   THE COURT:  And before signing this Agreement, did

21   you have a chance to read it and review it with your attorney?

22                   THE DEFENDANT:  Yes, ma'am.

23                   THE CLERK:  Thank you.

24                   THE COURT:  Thank you.  Counsel, did you review each

25   and every part of this Plea Agreement with your client?

David McCrone

1    MS. LOUIS-JEUNE: Yes, Your Honor.

2    THE COURT: Thank you. Mr. McCrone, are you

3    satisfied that you understand this entire Plea Agreement which

4    your lawyer has reviewed with you?

5    THE DEFENDANT: Yes, ma'am.

6    THE COURT: Do you have any questions either for

7    your lawyer or for me about what this Plea Agreement says?

8    THE DEFENDANT: No, ma'am.

9    THE COURT: Does this Plea Agreement contain the

10   complete understanding between you and the Government in

11   connection with this case?

12   THE DEFENDANT: Yes, ma'am.

13   THE COURT: Do you understand that anything which is

14   not set forth in the Plea Agreement or which is not told to me

15   at this time on the record will not be binding on the outcome

16   of your case?

17   THE DEFENDANT: Yes, ma'am.

18   THE COURT: And, Mr. Pertz, is there anything beyond

19   the written Plea Agreement the Court should be aware of?

20   MR. PERTZ: There is not.

21   THE COURT: And, Ms. Louis-Jeune, is there any other

22   agreement the Court should know about?

23   MS. LOUIS-JEUNE: No, Your Honor.

24   THE COURT: And, Mr. McCrone, did you sign the Plea

25   Agreement freely and voluntarily?

1           THE DEFENDANT:  Yes, ma'am.

2           THE COURT:  Did anyone force you or coerce you or

3    threaten you or promise you anything, other than what is set

4    forth in the written Plea Agreement, in order — in order to

5    get you to sign the Plea Agreement?

6           THE DEFENDANT:  No.

7           THE COURT:  Okay.  If you are convicted of the

8    charges — the lesser included offense, which is 21 U.S.C.

9    Section 841(b)(1)(B), in the Indictment, either, either after

10   trial or by a plea of guilty, you will be subject to a maximum

11   term of imprisonment of 40 years; a mandatory term of

12   imprisonment of five years; a maximum term of supervised

13   release of life; a mandatory minimum term of supervised

14   release of four years; a maximum fine, pursuant to Title 21,

15   United States Code, Section 841(b)(1)(B) and Title 18, United

16   States Code, Section 3571, of the greatest of $5 million, or

17   twice the gross pecuniary gain derived from the offense, or

18   twice the gross pecuniary loss to persons other than you

19   resulting from the offense, and a $100 mandatory special

20   assessment.  Do you understand that?

21          THE DEFENDANT:  Yes, ma'am.

22          THE COURT:  If you are sentenced to a term of

23   imprisonment, even if you are sentenced to the maximum term of

24   imprisonment, and if you are also sentenced to a term of

25   supervised release, and if you then violate the conditions of

1    supervised release, you can be sentenced to an additional term

2    of imprisonment for violating the conditions of your

3    supervised release, which in this case would be an additional

4    term of up to three years. Do you understand that?

5              THE DEFENDANT: Yes, ma'am.

6              THE COURT: In addition, if you violate the

7    conditions of your supervised release, you would not receive

8    credit for any time already served in prison or for time

9    served on supervised release. Do you understand that?

10             THE DEFENDANT: Yes, ma'am.

11             THE COURT: You are also subject to the possibility

12   of an order of forfeiture in this case.

13             Mr. Pertz, any restitution in this matter?

14             MR. PERTZ: There is not.

15             THE COURT: Okay. And, so, under this Plea

16   Agreement, Mr. McCrone, you are admitting to a forfeiture

17   allegation with respect to Count Two of the Indictment and

18   agreeing to forfeit to the United States, pursuant to Title

19   21, United States Code, Section 853(p), a sum of money equal

20   to $79,200, representing proceeds traceable to the commission

21   of the offense in Count Two. Do you understand that?

22             THE DEFENDANT: Yes, ma'am.

23             THE COURT: Do you understand that these are the

24   possible sentences that could be imposed following a plea of

25   guilty in this matter?

1           THE DEFENDANT:  Yes, ma'am.

2           THE COURT:  I believe you said you were an American

3   citizen; is that true — correct?

4           THE DEFENDANT:  That is correct.

5           THE COURT:  Okay.  So, do you also understand that

6   you're pleading guilty to a felony offense and that such an

7   adjudication may deprive you of certain valuable civil rights,

8   which may include the right to vote; the right to hold public

9   office; the right to serve on a jury; the right to possess any

10  type of firearm, including rifles and shotguns; the right to

11  be considered for certain types of employment or to be bonded

12  to serve in the United States Military, and the right to

13  possess or obtain certain government-issued licenses,

14  including licenses that may be required in certain professions

15  and occupations.  Do you understand that?

16          THE DEFENDANT:  Yes, ma'am.

17          THE COURT:  Do you also understand that one effect

18  of a plea of guilty to a narcotics-related offense is that you

19  may be ineligible for certain federal and federally-funded

20  benefits that you would otherwise have been eligible for,

21  including, but not limited to, Social Security, food stamp

22  benefits, education loans or grants, and public housing or

23  housing subsidies?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  Do you also understand that this

1   consequence may be for a limited period of time or it may be a

2   permanent barrier to your obtaining these benefits, depending

3   on the crime of convictions and your prior criminal record?

4                   THE DEFENDANT:  Yes, ma'am.

5                   THE COURT:  So, do you understand that these are the

6   possible legal consequences of a guilty plea?

7                   THE DEFENDANT:  Yes, ma'am.

8                   THE COURT:  Do you also understand that the United

9   States Sentencing Commission has issued Guidelines for judges

10  to follow in determining the appropriate sentence in a

11  criminal case?

12                  THE DEFENDANT:  Yes, ma'am.

13                  THE COURT:  Do you also understand that the

14  Guidelines are not mandatory but they must be considered by

15  the Court, along with other factors listed in 18 U.S.C.

16  Section 3553, when the Judge determines the appropriate

17  sentence to impose, including possible departures from the

18  Guidelines?

19                  THE DEFENDANT:  Yes, ma'am.

20                  THE COURT:  Have you and your attorney talked about

21  how the Sentencing Guidelines would be calculated in your

22  case?

23                  THE DEFENDANT:  We have.

24                  THE COURT:  And under the Plea Agreement in this

25  case, it sets forth the stipulated sentencing range of 135 to

```
1    168 months' imprisonment, and a stipulated fine range of
2    30,000 to five-million dollars.  Do you understand that?
3              THE DEFENDANT:  Can I have one second, Your Honor?
4              (Defendant conferring with Ms. Louis-Jeune)
5              MS. LOUIS-JEUNE:  Can I just have one second, Your
6    Honor?
7              THE COURT:  Yes.
8              (Defendant conferring with Ms. Louis-Jeune)
9              THE DEFENDANT:  Yes, ma'am.
10             THE COURT:  So, I just want to make sure that we're
11   clear on this.
12             The Plea Agreement in this case sets forth a
13   stipulated sentencing range of 135 to 168 months'
14   imprisonment, and a stipulated fine range of 30,000 to
15   five-million dollars.  Do you understand that?
16             THE DEFENDANT:  Yes, ma'am.
17             THE COURT:  And do you understand that this is
18   simply an understanding between you and your lawyer and the
19   lawyer for the Government and that it is not binding on the
20   District Judge when she imposes sentence?
21             THE DEFENDANT:  Yes, ma'am.
22             THE COURT:  Do you understand that the District
23   Judge will consider the Guidelines but will impose a sentence
24   in accordance with the statute, which in this case means that
25   the prison term will not be for more than 40 years with a
```

1  mandatory minimum term of imprisonment of five years?

2       Do you understand that?

3       THE DEFENDANT:  Yes, ma'am.

4       THE COURT:  Under this Plea Agreement, the parties

5  are also agreeing that neither a downward nor upward departure

6  from the stipulated guideline range set forth is warranted, so

7  neither party will seek any departure or adjustment pursuant

8  to the Guidelines that is not set forth here — within the

9  Plea Agreement.  Do you understand that?

10      THE DEFENDANT:  Yes, ma'am.

11      THE COURT:  And, also, under the Plea Agreement,

12 neither party will in any way suggest to the Probation Office

13 or the Court that they can — that they should consider such a

14 departure or adjustment under the Guidelines.  Do you

15 understand that?

16      THE DEFENDANT:  Yes, ma'am.

17      THE COURT:  Do you understand that the Court will

18 not be able to determine the appropriate sentence until after

19 the Presentence Report has been prepared, and until you and

20 your attorney, as well as the Government, have had an

21 opportunity to challenge the facts reported in the Presentence

22 Report, as well as the calculation of the sentencing guideline

23 range and any sentence recommendation in that report?

24      THE DEFENDANT:  Yes, ma'am.

25      THE COURT:  Do you also understand that if there are

1    any objections to the Presentence Report, that those

2    objections will be ruled on by the Court, and, if necessary, a

3    hearing will be held to determine what information is relevant

4    to the Court's determination of the sentence?

5              THE DEFENDANT:  Yes, ma'am.

6              THE COURT:  I want to go over some of the rights to

7    appeal that you're giving up under this Plea Agreement.

8              You're agreeing not to file a direct appeal nor

9    bring a collateral challenge, including, but not limited to,

10   an application under Title 28, United States Code, Section

11   2255 and/or Section 2241, of any sentence within or below the

12   stipulated guideline range of 135 to 168 months'

13   imprisonment, and the Government will not appeal any sentence

14   within or above the stipulated guideline range.  Do you

15   understand that?

16             THE DEFENDANT:  Yes, ma'am.

17             THE COURT:  You are also agreeing not to appeal or

18   bring a collateral challenge of any term of supervised release

19   that is less than or equal to the statutory maximum.  Do you

20   understand that?

21             THE DEFENDANT:  Yes, ma'am.

22             THE COURT:  You are also agreeing not to appeal or

23   bring a collateral challenge of any fine that is less than or

24   equal to $5 million, and the Government agrees not to appeal

25   or bring a collateral challenge of any fine that is greater

1    than or equal to $30,000.  Do you understand that?

2                 THE DEFENDANT:  Yes, ma'am.

3                 THE COURT:  You are also agreeing not to appeal or

4    bring a collateral challenge of any forfeiture amount that is

5    less than or equal to $79,200, and the Government agrees not

6    to appeal or bring a collateral challenge of any forfeiture

7    amount that is greater than or equal to $79,200.  Do you

8    understand that?

9                 THE DEFENDANT:  Yes, ma'am.

10                THE COURT:  You are also agreeing not to bring a

11   collateral challenge of any special assessment that is less

12   than or equal to $100.  Do you understand that?

13                THE DEFENDANT:  Yes, ma'am.

14                THE COURT:  Also, you're waiving any and all rights

15   to withdraw your plea or attack your conviction, either on

16   direct appeal or collaterally, on the ground that the

17   Government has failed to produce any discovery material,

18   Jencks Act material, exculpatory material pursuant to Brady v.

19   Maryland, other than information establishing your factual

20   innocence or impeachment material pursuant to Giglio v. the

21   United States, that has not already been produced as of the

22   date of the signing of the Plea Agreement.  Do you understand

23   that?

24                THE DEFENDANT:  Yes, ma'am.

25                THE COURT:  Do you also understand that if you

1    disagree with the Court's sentencing decision, that will not

2    give you a basis for withdrawing your plea of guilty?

3              THE DEFENDANT:  Yes, ma'am.

4              THE COURT:  Do you also understand that parole has

5    been abolished and if you are sentenced to a term of

6    imprisonment, you will not be eligible for early release on

7    parole?

8              THE DEFENDANT:  Yes, ma'am.

9              THE COURT:  Do you understand you do not have to

10   plead guilty and you have an absolute right to plead not

11   guilty and to have the matter go to trial by judge or by jury?

12             THE DEFENDANT:  Yes, ma'am.

13             THE COURT:  Do you understand if you choose to plead

14   not guilty, you are entitled to have a speedy and public trial

15   of your case?

16             THE DEFENDANT:  Yes, ma'am.

17             THE COURT:  Do you understand at any trial of this

18   matter you would be entitled to the presumption of innocence

19   and that presumption would remain with you until the

20   Government proves each and every element of the crime charged

21   beyond a reasonable doubt, to the satisfaction of the judge,

22   if it's a judge trial, or to the unanimous satisfaction of the

23   jury, if it's a jury trial?

24             THE DEFENDANT:  Yes, ma'am.

25             THE COURT:  At that trial, you would have the right,

1    with the assistance of your attorney, to confront and

2    cross-examine the witnesses against you.  You would have the

3    right to call witnesses to testify for you and to have

4    subpoenas issued to compel witnesses to give testimony.

5           You would also have the right to testify at your

6    trial, but you could not be forced to testify.  If you decide

7    not to testify, your decision to remain silent could not be

8    held against you in any way.  Do you understand that?

9           THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  At your trial, you would also have the

11   right, which I've already mentioned, to the assistance of an

12   attorney and to have an attorney appointed to represent you if

13   you could not afford counsel.  Do you understand that?

14          THE DEFENDANT:  Yes, ma'am.

15          THE COURT:  Do you also understand if you plead

16   guilty to the charge in this Felony Indictment, that you would

17   give up your right to a trial, and except for the right to

18   counsel, you would give up all the other rights which I have

19   explained to you here?

20          THE DEFENDANT:  Yes, ma'am.

21          THE COURT:  Is there anything else in the Plea

22   Agreement that either counsel would like me to go over with

23   Mr. McCrone?

24          MR. PERTZ:  No, Your Honor.

25          MS. LOUIS-JEUNE:  No, Your Honor.

1          THE COURT:   Thank you.  So, Mr. McCrone, have you
2     clearly heard and understood everything I've said to you?
3          THE DEFENDANT:   Yes, ma'am.
4          THE COURT:   Do you have any questions for me or for
5     your attorney about anything I've said or about anything I've
6     asked you?
7          THE DEFENDANT:   No, ma'am.
8          THE COURT:   Thank you.  So, Mr. Pertz, can you tell
9     me what are the elements of the offense and what the
10    Government is prepared to prove at trial in order to establish
11    those elements?
12         MR. PERTZ:   In order to prove the Defendant guilty
13    of Count Two of the Indictment, the Government would have to
14    prove the following elements beyond a reasonable doubt:
15         First, there was an agreement or understanding to
16    distribute narcotics and to possess narcotics with intent to
17    distribute; second, that the Defendant unlawfully,
18    intentionally, and knowingly became a member of the
19    conspiracy, that is, he knowingly joined and intentionally
20    participated in the conspiracy to distribute narcotics and
21    possess with intent to distribute narcotics; third, the
22    overall scope of the conspiracy involved 50 grams and more of
23    mixtures and substances containing a detectable amount of
24    methamphetamine.
25         The Government expects that the evidence at trial

1    would show the following, in substance and in part:

2           Between in or about May 2021 up to and including in

3    or about June 2021, David McCrone, the Defendant, agreed with

4    others to possess with intent to distribute 50 grams and more

5    of mixtures and substances containing methamphetamine and did

6    so knowingly and intentionally.

7           McCrone was part of a drug trafficking organization

8    that operated in New Rochelle, New York, among other

9    locations.  For instance, in or about June of 2021, after

10   arranging with a co-conspirator over the phone to buy

11   methamphetamine on commission, McCrone sent couriers into and

12   through the Southern District of New York.  The couriers

13   picked up methamphetamine that had been stored at an

14   apartment in New Rochelle, and those couriers brought it back

15   to McCrone, who lived in Broome County, New York.  McCrone

16   then sold at least some of the methamphetamine.

17          If this matter had gone to trial, the Government

18   expects that it would introduce, among other things, the

19   following evidence to prove the Defendant guilty beyond a

20   reasonable doubt:  Physical evidence, including

21   methamphetamine recovered by law enforcement from the

22   Defendant's safe and additional methamphetamine recovered

23   from the New Rochelle apartment; law enforcement testimony as

24   to their surveillance of McCrone's couriers, and Title III

25   wire intercepts of phone conversations between the Defendant

1    and other individuals showing Mr. McCrone's agreement to buy
2    and sell methamphetamine.
3            In addition, as to venue, the Government would show
4    by a preponderance of the evidence through wire intercepts,
5    GPS data, law enforcement testimony, that the Defendant
6    ordered methamphetamine from an apartment in New Rochelle in
7    the Southern District of New York.
8            THE COURT:  Thank you.  I just want to clarify one
9    thing.  You gave me the elements for Count Two, but it's
10   really for the lesser included offense of Count Two, right?
11           Because you said that the new scope was 50 grams of
12   methamphetamine.  So, I just wanted to confirm that it's the
13   lesser included charge, right?
14           MR. PERTZ:  Thank you.  That is correct.  It is 21
15   U.S.C. 846, and the lesser included of the cited statute in
16   the Indictment would be 21 U.S.C. 841(a)(1), (b)(1)(B),
17   involving 50 grams and more of mixtures and substances
18   containing a detectable amount of methamphetamine.
19           THE COURT:  Thank you, Mr. Pertz.
20           MR. PERTZ:  Five years.
21           THE COURT:  Okay.  Mr. McCrone, I'm going to ask you
22   to stand at this point.
23           Did you hear what A.U.S.A. Pertz said?
24           THE DEFENDANT:  I did, Your Honor.
25           THE COURT:  Okay.  At this time, how do you wish to

1    plead to the charges?

2              THE DEFENDANT:  Guilty.

3              THE COURT:  Has anyone threatened you or coerced you

4    or pressured you improperly in order to get you to plead

5    guilty to these charges?

6              THE DEFENDANT:  No, ma'am.

7              THE COURT:  Has anyone made any promises to you,

8    other than what's set forth in the Plea Agreement, in order to

9    induce you to plead guilty?

10             THE DEFENDANT:  No, ma'am.

11             THE COURT:  Has anyone made any specific promises to

12   you about what the sentence of the Court will be?

13             THE DEFENDANT:  No, ma'am.

14             THE COURT:  Can you tell me in your own words what

15   you did to commit this crime?

16             THE DEFENDANT:  In and about May 2021 to June 2021,

17   I agreed with others, in the Southern District of New York, to

18   possess and distribute 50 grams and more of methamphetamines.

19   I knew this was illegal and wrong.  I accept full

20   responsibilities for my actions.  I'm working to better

21   myself, and at sentencing, I hope the Court will have leniency

22   on me and give me a chance to live my new life.

23             THE COURT:  Did you do these acts knowingly and

24   willfully, Mr. McCrone?

25             THE DEFENDANT:  I couldn't hear that, Your Honor.

1    Say it again, please.

2                 THE COURT:   Yes.  Did you commit these acts

3    knowingly and willfully?

4                 THE DEFENDANT:   Yes, ma'am.

5                 THE COURT:   And you knew it was against the law to

6    do what you were doing?

7                 THE DEFENDANT:   Yes, ma'am.

8                 THE COURT:   And you said you did these in the

9    Southern District of New York.  Where was this — did this

10   occur in the Southern District?

11                THE DEFENDANT:   In New Rochelle, ma'am.

12                THE COURT:   Thank you.  Is there anything else which

13   either counsel believes the Court needs to elicit from the

14   Defendant before making the recommendation contemplated by

15   Rule 11 of the Federal Rules of Criminal Procedure?

16                MR. PERTZ:   No, Your Honor.

17                MS. LOUIS-JEUNE:   No, Your Honor.

18                THE COURT:   Thank you.  And, Ms. Louis-Jeune, do you

19   know of any reason why the Court should not recommend

20   acceptance of your client's plea of guilty in this matter?

21                MS. LOUIS-JEUNE:   No, Your Honor.

22                THE COURT:   And, Mr. Pertz, do you know of any

23   reason why the Court should not recommend acceptance of the

24   plea?

25                MR. PERTZ:   No, Your Honor.

                 Sue Ghorayeb,  Official Court Reporter

1        THE COURT:  Mr. McCrone, in light of everything

2   that's been said here today, is it still your wish to plead

3   guilty to the charges contained in the Felony Indictment?

4        THE DEFENDANT:  Yes, ma'am.

5        THE COURT:  On the basis of the allocution, the

6   responses to my questions, I find the Defendant is fully

7   competent and capable of entering an informed plea.

8        I'm satisfied that you understand your rights, Mr.

9   McCrone, including your right to go to trial; that you are

10  aware of the consequences of your plea, including the

11  sentence that may be imposed.

12       Based on this plea allocution, I find the plea is

13  knowing and voluntary, and it is supported by an independent

14  factual basis for each and every element of the lesser

15  included offense charged in Count Two of the Indictment.

16       Accordingly, I respectfully report and recommend to

17  Judge Seibel that the plea be accepted and the Defendant be

18  adjudged guilty of the lesser included offense charged in

19  Count Two in the Felony Indictment.

20       I'm going to direct that a presentence

21  investigation be conducted by the United States Department of

22  Probation and that a Presentence Report will be prepared.

23       Within 14 days from today, Mr. McCrone, your

24  attorney will assist you with this, but you'll have to meet

25  with a member of the Department of Probation for an

1    interview.  I just want you to be aware that you must be

2    fully honest and truthful during that interview, because if

3    it comes to the Court's attention that you've provided false,

4    incomplete or misleading information, that may be held

5    against you at the time of sentencing.  Do you understand?

6              THE DEFENDANT:  Yes, ma'am.

7              THE COURT:  Mr. McCrone, you can be seated.

8              The prosecution case summary for purposes of the

9    Presentence Report is to be delivered to the Probation

10   Department no later than 14 days from today.  Fourteen days

11   from today is August 18th, 2022.

12             I'm going to further direct that the court reporter

13   provide a transcript of these proceedings within thirty days,

14   setting forth my report and recommendation to Judge Seibel.

15   The transcript is to come to me first for review.

16             Judge Seibel has scheduled this for sentencing on

17   November 15th, 2022, at 2:15 p.m.  Please contact Judge

18   Seibel's chambers to confirm the date and time of sentencing.

19             Is there anything further we need to do today?

20             MR. PERTZ:  No, Your Honor.  Thank you.

21             MS. LOUIS-JEUNE:  No, Your Honor.  Thank you.

22             THE COURT:  Thank you, Counsel.

23             And good luck, Mr. McCrone.

24             THE DEFENDANT:  Thank you very much.

25             (Case adjourned)

1 UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
2
------------------------------------x
3 UNITED STATES OF AMERICA,

4
                                    21 CR 463(CS)
5     -vs-
                                    SENTENCING
6
DAVID McCRONE,
7
                              Defendant.
8
------------------------------------x
9
                              United States Courthouse
10                            White Plains, New York

11                            December 5, 2022

12 Before:  THE HONORABLE CATHY SEIBEL, District Judge

13
A P P E A R A N C E S:
14
DAMIAN WILLIAMS
15     United States Attorney for the
       Southern District of New York
16 BY:  QAIS GHAFARY
       Assistant United States Attorney
17
LAW OFFICE OF JENNIFER R. LOUIS-JEUNE
18 JENNIFER LOUIS-JEUNE
BY:  JENNIFER LOUIS-JEUNE
19     Attorney for Defendant

20

21

22

23

24

25

1          THE DEPUTY CLERK:  All rise.  The Honorable Cathy

2  Seibel presiding.  United States v. McCrone.

3          THE COURT:  Good afternoon.  Everyone can have a seat.

4          Good afternoon, Mr. Ghafary, Ms. Louis-Jeune and

5  Mr. McCrone.

6          THE DEFENDANT:  Good afternoon, Your Honor.

7          MS. LOUIS-JEUNE:  Good afternoon, Your Honor.

8          THE COURT:  This was on for 2:15.

9          MR. GHAFARY:  My apologies, Your Honor.  I was told it

10  was on for 2:30.  That's our mistake.

11          THE COURT:  Nice of you not to rat out whoever told

12  you it was 2:30, but tell that person to check next time.

13          MR. GHAFARY:  Will do.

14          THE COURT:  Let me start by putting on the record what

15  I have received in connection with the sentencing.  I have a

16  presentence report, which is dated October 25th.  I have

17  Ms. Louis-Jeune's submission of November 21st with attachments.

18  I have the government's November 28th submission, and of course

19  I have the transcript from the magistrate judge, which I have

20  reviewed and accepted.

21          Anything else that I should have?

22          MR. GHAFARY:  Not from the government, Your Honor.

23  Thank you.

24          MS. LOUIS-JEUNE:  Not from the defense.

25          THE COURT:  All right.  Mr. McCrone, have you read the

1 presentence report and the addendum?

2          THE DEFENDANT:  Yes, ma'am.

3          THE COURT:  Have you gone over those with your lawyer?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  Are you satisfied with Ms. Louis-Jeune and

6 her representation of you?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  Ms. Louis-Jeune, you have read the

9 presentence report and the addendum and gone over them with your

10 client?

11          MS. LOUIS-JEUNE:  Yes, Your Honor.

12          THE COURT:  Do you have any objections to the factual

13 material in the presentence report?

14          MS. LOUIS-JEUNE:  No, Your Honor.

15          THE COURT:  Does the government have objections to the

16 factual material in the presentence report?

17          MR. GHAFARY:  No, Your Honor.

18          THE COURT:  All right.  Then the findings the fact in

19 the presentence report are my findings of fact.

20          Does the government wish to be heard?

21          MR. GHAFARY:  Yes, Your Honor.  We are going to

22 principally rely on our briefs.  We believe that a guideline

23 sentence here is sufficient, but not greater than necessary,

24 particularly given the nature and seriousness of the offense,

25 the need to afford deterrence here, and the defendant's history

1  and characteristics; and for those reasons, we believe a

2  guideline sentence is appropriate.

3              THE COURT:  Thank you.

4              Ms. Louis-Jeune?

5              MS. LOUIS-JEUNE:  Good afternoon, Your Honor.

6          I would first like to thank Mr. McCrone's sister and

7  his girlfriend, who are here and present in the courtroom today.

8  They drove approximately three hours one way to get here, and

9  they had to borrow a car to do so.  There were other family

10 members and friends who wished to be here, but they weren't able

11 to make that drive.

12         Also, I would like to point out that Mr. McCrone's

13 mother wishes that she could be here today.  She is ill, and we

14 have described in our sentencing submission her deteriorating

15 state of health.  She remains in full support of Mr. McCrone and

16 asks Your Honor for leniency.

17         Next to me is Mr. David McCrone, and this, Your Honor,

18 is the face of unresolved trauma.  He's witnessed domestic

19 violence, lack of supervision, parental neglect, physical and

20 sexual abuse, and a lifetime of drug use has been used to try to

21 cope with all of that turmoil.

22         Mr. McCrone is 52 years old, Your Honor, and it's only

23 now that he is beginning to be able to see himself clearly; and

24 I can tell you that he does not like what he sees, and he is

25 finally ready for a change.  Eighteen years in prison did not

1  bring about this change that Mr. McCrone is ready for, and

2  another significant term of prison will only impede the progress

3  that he has finally begun to make.  We ask that this Court take

4  into consideration Probation's recommendation, which is of a

5  sentence of 120 months, and we ask for what we know is a

6  significant variance of less than 120 months.

7           More jail time will not lead to better results for

8  Mr. McCrone.  It's just a fact that longer sentences don't deter

9  crime.  Putting Mr. McCrone into jail for a lengthy amount of

10 time will only serve one purpose, and that purpose is

11 punishment.  What he needs is treatment and rehabilitation.

12 Being in prison will only further teach him to be a prisoner.

13 Mr. McCrone made this point in his letter that he wrote to Your

14 Honor stating, "Prison teaches you to be irresponsible.  When

15 you are in, you don't have to worry about bills, food, anything.

16 You just close the door, and that's it.  I want more."

17          The "more" that Mr. McCrone wants is a chance to face

18 all that has held him back and to heal and move forward from it.

19 He is 52 years old.  He now has a federal drug conviction on his

20 rap sheet in addition to the rest of his rap sheet, and he knows

21 that this is truly his last chance.  Mr. McCrone accepted

22 responsibility for his actions early in this case, and he took

23 steps to try to resolve this matter from the beginning.  And

24 while his actions in this case were not insignificant,

25 Mr. McCrone is not a leader, and he did not use violence like

1  some of his co-defendants.

2          In its sentencing submission the government stresses

3  that there is a need for deterrence from further illegal

4  activity, and we agree.  However, we believe that that

5  deterrence can come about and will be more long-lasting and

6  meaningful if it prioritizes treating the root causes of

7  Mr. McCrone's behavior and not just punishing the symptoms by

8  throwing him in jail and hoping that BOP gets it right.

9          Mr. McCrone has already shown his willingness and his

10 desire to change by enrolling in the Solutions and the RSVP

11 programs while at Westchester County Jail.  He went to

12 Solutions, which is only a six-week program.  He went

13 voluntarily for several months because he found it to be so

14 beneficial.  He is now enrolled in an RSVP program, which is

15 Resolve to Stop the Violence, which is a scientifically

16 proven -- which has been scientifically proven to reduce

17 recidivism.

18         Mr. McCrone has support, and he has hope.  He wishes

19 to remain on his path to transformation and healing through

20 substance abuse and mental health treatment and trauma

21 counseling.

22         We ask this Court for a significant variance of less

23 than 120 months.  However, whatever sentence the Court finds

24 appropriate, we respectfully make three requests:  That the

25 Court require medical attention immediately for Mr. McCrone to

1  have a vision screening and glasses provided.  The glasses he

2  has today he's borrowed from someone else, and he -- despite

3  several requests -- has not been able to -- he has not been able

4  to be seen while at Westchester County Jail.

5          We ask that the Court make a recommendation for

6  Mr. McCrone to be enrolled in the RDAP program and any other

7  substance abuse and mental health treatment programs available

8  while he is in the Bureau of Prisons, and finally, that he be

9  placed in a facility as close as possible to Conklin, New York

10 where his family resides, so that they will be able to visit him

11 and support him during any term of imprisonment.  Thank you.

12         THE COURT:  Thank you, Ms. Louis-Jeune.

13         Mr. McCrone, if there is anything you want to say

14 before I sentence you, I will hear you now.

15         THE DEFENDANT:  Yes, ma'am.

16         THE COURT:  It's all right with me if you want to stay

17 seated, whatever is more comfortable for you.

18         THE DEFENDANT:  I grew up in a time where a man didn't

19 show his feelings.  I was passed around as a kid to aunts and

20 uncles who showed me love with a belt, a belt buckle or

21 extension cords, and I was molested by my brother, who also

22 molested my sister who is in court.  I have been beaten by every

23 boyfriend and stepfather that I have known.  My mother's second

24 husband poured hot coffee down my back and gave me third-degree

25 burns.  My mother's third husband broke my wrist, sent me to the

1  hospital.  I used drugs; used it to escape.  All the time to ask

2  for help, and I was getting -- given three majority answers:

3  One, it's beyond our pay grade.  Two, the staff isn't

4  appropriate to deal with your type of trauma, and the most

5  common that I've had happen numerous times, even as far as a

6  month back, that I have to be ready to hurt myself to get any

7  type of help.  I'm not asking you for help.  I'm begging you,

8  and I will show you if you give it to me, that I will work

9  endlessly never to come back in front of you.

10        I apologize to my family, to my community, and I also

11  want to thank the agents who rescued me because I didn't like

12  what I became.  I thank you.

13        THE COURT:  Thank you.

14        I have to start with the sentencing guidelines.  They

15  are only advisory, but they are a starting point.  They are not

16  in dispute here.  The base offense level is 34 because the

17  offense involved a lot of methamphetamine, more than five kilos.

18  Three levels are subtracted for the defendant's timely

19  acceptance of responsibility -- timely acceptance of

20  responsibility.  The offense level is 31.  The defendant has a

21  lengthy criminal history going back decades:  Assault, burglary,

22  criminal mischief, criminal possession, criminal sale, probation

23  and parole revocations, all of which are too old to count toward

24  his criminal history.  The one conviction that does count is the

25  2002 conviction for robbery, which resulted in a ten-year

1  sentence, and the parole for that offense lasted into 2022.  So

2  that is not too old.  I am just trying to figure out why -- oh,

3  because there were two counts under 4A1.2(e)(1).  This is a

4  four-pointer because they were sentenced together.

5          So there are four points for that conviction, and two

6  more because the instant offense was committed while the

7  defendant was on parole.  So that's six points in Criminal

8  History Category III.  At Level 31, that results in a sentencing

9  range of 135 to 168 months, which is 13 years and change at the

10 low end.

11         Whether I should sentence within, above or below that

12 range turns on the 3553(a) factors.  The first is the nature and

13 circumstances of the offense.  As Ms. Louis-Jeune has pointed

14 out, it's a nonviolent offense.  It doesn't involve Mr. McCrone

15 being a leader or an importer or a kingpin of any sort, but he

16 was a prolific drug dealer selling methamphetamine, which he

17 knows better than anybody is incredibly destructive to people's

18 lives, and he was doing it at high volume.  Search warrants

19 executed at the time of his arrest led to the recovery of five

20 pounds of methamphetamine, as well as almost 150 grams of crack

21 and 25,000 in cash.  So this was not somebody just scraping by

22 at street level transactions to support his own habit.  This was

23 some pretty major drug dealing.

24         I don't doubt at all that Mr. McCrone's own habit was

25 a big part of this, but he was dealing at a much higher level

1 than would have been necessary simply to support his own habit

2 as serious and as expensive as it was.  Five pounds of meth is a

3 lot.  25,000 in cash is a lot.  A hundred-something grams of

4 crack is a lot.

5          So it's a very serious offense that caused a lot of

6 harm to the community.

7          The history and characteristics of the defendant cut

8 both ways.  Ms. Louis-Jeune has put together a package that

9 describes very well the awful things that happened to

10 Mr. McCrone as a kid.  With a mother -- with a father who was

11 gone, a mother who cared more about drinking and partying than

12 raising her son; relatives who abused drugs and alcohol and were

13 involved in domestic violence and were abusive.  Step-fathers

14 and boyfriends who were abusive, a sibling who was abusive; just

15 a chaotic family situation where nobody was looking out for

16 Mr. McCrone's even safety, let alone giving him no love and

17 support and nurturing and guidance that a kid needs.  So it is

18 not the least bit surprising that Mr. McCrone at a young age

19 turned to drugs and alcohol.

20          You know, this description of not only the direct

21 abuse, but the neglect such as the adults in his life letting an

22 infected foot get so bad that he ended up in the hospital for

23 six months.  It's pretty Dickensian.

24          And it does not appear that the defendant's gotten any

25 formal mental health treatment.  He's gotten drug treatment, but

1  only when incarcerated.  I can't understand why that was not

2  part of parole.  But in any event, I agree with Ms. Louis-Jeune

3  that this is an individual who's going to need mental health

4  treatment, perhaps even more than drug treatment because the --

5  until he deals with those issues, the chances are good he is

6  going to go back to what he's been doing his whole life.

7        So it's certainly mitigating that this defendant's

8  childhood was so awful, and he's -- for a middle-aged man, he's

9  got the health problems of a much older person, and that's what

10 happens from a lifetime of drinking and drugs.  It's a good sign

11 that he's completed a program in the jail and continued with it

12 even when he didn't have to.  Those are all on the plus side.

13       On the minus side, of course, is the track record,

14 which has been conviction -- crime after crime, and conviction

15 after conviction and no change, even when under supervision, and

16 that's obviously worrisome because the best predictor of the

17 future is usually the past, and the defendant's last sentence

18 was a long one.  That was a ten-year sentence, and somehow that

19 didn't prevent Mr. McCrone from reverting to the same pattern

20 once he got out.

21       I have to consider the seriousness of the offense,

22 which I have already talked about.  I have to consider promoting

23 respect for the law, which is an issue here with somebody with a

24 long rap sheet.  Obviously, Mr. McCrone does not factor in the

25 law in making his decisions.

A 74

1          I have to consider deterrence.  I'm not sure that

2   that's a major factor here because if ten years didn't do it, my

3   sentence, whether it's a little less or a little more than that,

4   is not going to do it.  And, frankly, if Mr. McCrone is doing

5   drugs, he is going to break the law.  So I think Ms. Louis-Jeune

6   is right that the root cause is the problem here.

7          On the other hand, I have to consider protecting the

8   public from further crimes, and that is a big concern because

9   Mr. McCrone has never been able to refrain from criminal

10  activity for a lengthy period of time except when he has been

11  locked up, and I think he said to me that's been 18 years of his

12  adult life, which is just a shame, but that's what worries me.

13         I have to consider the guidelines.  I have considered

14  all of the 3553(a) factors, even the ones we haven't discussed.

15  Probation is recommending ten years.  Defendant's already done

16  over a year.  He is going to be pushing 60 when he gets out if I

17  give him ten years.  Ordinarily, we say older people are not

18  likely to continue committing crimes, but Mr. McCrone is the

19  exception to that rule.  He was in his 50s when he was

20  committing this crime, early 50s.

21         I don't think a sentence of 13 years, which is what

22  the guidelines call for, is necessary.  I don't even think the

23  120 months that Probation is recommending is necessary, but I

24  can't go very much below that.  I am going back and forth

25  between two numbers, and when I do that, that tells me I should

1 go with the lower one.

2          The only sentence I can stomach here is 102 months.

3 That is eight and a half years.  That's going to be followed by

4 five years of supervised release on the following conditions:

5 Defendant will not commit another federal, state or local crime.

6 He will not unlawfully possess a controlled substance.  He will

7 refrain from any unlawful use of a controlled substance.  He

8 will submit to one drug test within 15 days of release from

9 imprisonment, and at least two more thereafter.  He will

10 cooperate in the collection of DNA as directed by Probation.  He

11 will comply with the standard conditions of supervision 1

12 through 12, along with the following special conditions:  He

13 will participate in an outpatient substance abuse treatment

14 program approved by the probation office, which may include

15 testing to determine whether he's reverted to using drugs or

16 alcohol.

17          He will also participate in an outpatient mental

18 health treatment program approved by the probation office and

19 will take any prescribed medications unless otherwise instructed

20 by the provider.  For both programs he will contribute to the

21 cost of services rendered based on ability to pay and

22 availability of third-party payment.  I authorize the release of

23 available drug treatment evaluations and reports, including the

24 presentence report and the defendant's sentencing submissions,

25 to the respective providers.

1          Defendant will provide the probation officer with

2   access to any requested financial information.  There is no

3   restitution, so I am not going to impose the condition involving

4   credit.

5          He will submit his person and any property, residence,

6   vehicle, papers, effects, computers, other electronic

7   communication or data storage devices, cloud storage or media to

8   a search by any probation officer with the assistance of law

9   enforcement if needed.  The search is to be conducted upon

10  reasonable suspicion concerning a violation of a condition of

11  supervision or unlawful conduct by the defendant.  Failure to

12  submit to search may be grounds for revocation.  Defendant shall

13  warn any other occupants that the premises may be subject to

14  search pursuant to this condition.  Any search will be conducted

15  at a reasonable time and in a reasonable manner.

16         I recommend the defendant be supervised by his

17  district of residence.  I am not imposing a fine based on

18  inability to pay.  I am imposing the mandatory $100 special

19  assessment, which is due immediately, and I am imposing the

20  agreed-upon forfeiture of $79,200.

21         Does either lawyer know of any legal reason why the

22  sentence I have described should not be imposed?

23         MR. GHAFARY:  No, Your Honor.

24         MS. LOUIS-JEUNE:  No, Your Honor.

25         THE COURT:  All right.  And I will recommend a

1  facility close to Conklin, and I am going to recommend mental

2  health and substance abuse treatment.

3              I don't ever specify RDAP because, first of all, I

4  don't think you are eligible for it until you get to the end of

5  your sentence, but more importantly, I think there are more

6  people who want that program than there are beds, and I don't

7  know who -- although it strikes me that Mr. McCrone would be an

8  excellent candidate -- I don't know at any given time who else

9  is interested in it.  So I leave that decision to BOP.

10             And unless defendant is moved in the next 48 hours, I

11 am going to direct the jail to get him glasses.  I don't know.

12 That seems outrageous to me that he's been there all of these

13 months and can't get glasses.  Sounds to me like they are

14 waiting for BOP, but Mr. McCrone shouldn't have to go any longer

15 than necessary without them.  So I will do a medical record

16 order and give it to the marshals today.

17             All right.  The sentence I have described is the

18 sentence I impose.  It's the sentence I find sufficient, but not

19 greater than necessary, to serve the purposes of sentencing.

20             Mr. McCrone, you have the right to appeal your

21 conviction and sentence except to the extent you have given up

22 that right through your guilty plea or your plea agreement.  If

23 you think you have grounds to appeal, and you are unable to pay

24 the costs of an appeal, you can apply for permission to appeal

25 without paying.  Any notice of appeal must be filed within 14

1 days of entry of the judgment of conviction, and Ms. Louis-Jeune

2 will assist you with that.

3          Eight and a half years is a long time.  It's not as

4 long as 13 years, and I have gone considerably below the

5 guidelines because of what you endured as a kid and the effect

6 it's had on your life, but now it's up to you to change things;

7 and I think you know that if you don't, you are probably going

8 to end up back in prison and die there because I don't think

9 anybody is going to give you a break the next time.

10          You know, if all this sentencing were about is, you

11 know, who had the worst time growing up, and who didn't get the

12 help, and who was failed by the adults in his life, and who

13 really needs help, this would be a much easier job.  I also have

14 to consider a whole bunch of other things, including protecting

15 the public against further crimes, which is a big issue here.

16          You will get the help this time around, but

17 unfortunately, all too often people get help, and they still

18 revert to their past ways, and that's what I am worried about

19 here and why I didn't feel like I could go any lower, both

20 because of the need to protect the public and the seriousness of

21 the offense.  So you will have plenty of time to think about how

22 you are going to try to make things different this time.

23          I will tell you federal supervision you will probably

24 find different from parole.  The people who are supervising you

25 in the feds really want to help you.  They really want you to

1  succeed.  They feel like they have failed if they have to bring

2  you back before a judge on a violation, but you have to let them

3  help you, and that means being honest with them even when you

4  screw up.  I can't tell you how many people come through here,

5  and they get in trouble because they relapsed, and instead of

6  just saying, you know what, I relapsed, I need a more intensive

7  program, they lie about it or they get pulled over, and instead

8  of informing their probation officer, they lie about it, and

9  then they are not letting Probation, their probation officer

10 help them, and they end up in a lot more hot water than they

11 otherwise would have been.

12         So I hope when you get out, and I recognize that's a

13 ways off, but I hope when you get out, you will let them help

14 you.  They really do want to help you.  The best thing that can

15 happen is you and I never see each other again because that

16 means you got out, and you were able to change.  I think that

17 you've taken some big steps already.  And that was probably with

18 the help of Dr. Pearson.  She got you opening up, and that's

19 going to be a big part of what you need to do.

20         I don't know why the adults in your life were so

21 awful.  It's hard for normal people to fathom who would treat a

22 kid like that or who would look the other way when their kid was

23 being abused.  It's just shocking.  And it's not too late to

24 change, and I wouldn't have given you the sentence that I did

25 give you if I didn't think you had the ability to change.  So I

1   wish you luck.

2         Are there open counts, Mr. Ghafary?

3         MR. GHAFARY: Not as to this defendant, Your Honor.

4         THE COURT: All right. Is there anything else we

5   should do this afternoon?

6         MR. GHAFARY: Not from the government, Your Honor.

7         MS. LOUIS-JEUNE: No, Your Honor.

8         THE COURT: All right. I am going to write here,

9   Defendant is to be given glasses immediately unless marshals

10   take him out before -- today is the 5th -- or the 7th.

11         All right. Thank you, all. Oh, I also am signing a

12   Consent Preliminary Order of Forfeiture.

13                   -o0o-

14

15

16

17

18

19

20

21

22

23

24

25

A 81

AO 245B (Rev. 09/19)   Judgment in a Criminal Case      (form modified within District on Sept. 30, 2019)
Sheet 1

# UNITED STATES DISTRICT COURT

Southern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | |
| David McCrone | Case Number:  7:21-CR-00463 (CS) (4) |
| | USM Number:  52501-509 |
| | Jennifer Louis-Juene, Esq. |
| | Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)    Two of Indictment 21 CR 00463 (CS).

☐ pleaded nolo contendere to count(s)  _____
which was accepted by the court.

☐ was found guilty on count(s)  _____
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 U.S.C. § 846, | Conspiracy to Distribute Methamphetamine, a Class B | 6/28/2021 | Two |
| 21 U.S.C. § 841(b)(1)(B) | Felony. | | |
| [lesser-included] | | | |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)  _____

☐ Count(s)  _____ ☐ is  ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

12/5/2022
Date of Imposition of Judgment

*Cathy Seibel*
Signature of Judge

Cathy Seibel, U.S.D.J.
Name and Title of Judge

12/9/22
Date

A 82

AO 245B (Rev. 09/19) Judgment in Criminal Case
　　　　Sheet 2 — Imprisonment

Judgment — Page ___2___ of ___7___

DEFENDANT:　　David McCrone
CASE NUMBER:　　7:21-CR-00463 (CS) (4)

## IMPRISONMENT

　　The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
One hundred two (102) months as to Count Two of Indictment 21 CR 00463 (CS). Defendant is advised of his right to appeal.

☑　The court makes the following recommendations to the Bureau of Prisons:
　　The Court recommends placement at a facility as close as possible to Conklin, New York as well as mental health and substance abuse treatment.

☑　The defendant is remanded to the custody of the United States Marshal.

☐　The defendant shall surrender to the United States Marshal for this district:

　　☐　at _____ ☐ a.m. ☐ p.m. on _____ .

　　☐　as notified by the United States Marshal.

☐　The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

　　☐　before 2 p.m. on _____ .

　　☐　as notified by the United States Marshal.

　　☐　as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

　　Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

A 83

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
                  Sheet 3 — Supervised Release

Judgment—Page  3  of  7

DEFENDANT:   David McCrone
CASE NUMBER:   7:21-CR-00463 (CS) (4)

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

Five (5) years as to Count Two.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   - ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

A 84

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
                       Sheet 3A — Supervised Release

| Judgment—Page | 4 | of | 7 |

DEFENDANT:  David McCrone
CASE NUMBER:  7:21-CR-00463 (CS) (4)

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature  _____          Date  _____

A 85

DEFENDANT:  David McCrone
CASE NUMBER: 7:21-CR-00463 (CS) (4)

# SPECIAL CONDITIONS OF SUPERVISION

You will participate in an outpatient substance abuse treatment program approved by the United States Probation Office, which program may include testing to determine whether you have reverted to using drugs or alcohol. You must contribute to the cost of services rendered based on your ability to pay and the availability of third-party payments. The Court authorizes the release of available drug treatment evaluations and reports, including the presentence investigation report and Defendant's sentencing submissions, to the substance abuse treatment provider.

You must participate in an outpatient mental health treatment program approved by the United States Probation Office. You must continue to take any prescribed medications unless otherwise instructed by the health care provider. You must contribute to the cost of services rendered based on your ability to pay and the availability of third-party payments. The Court authorizes the release of available psychological and psychiatric evaluations and reports, including the presentence investigation report and Defendant's sentencing submissions, to the health care provider.

You must provide the probation officer with access to any requested financial information.

You shall submit your person, and any property, residence, vehicle, papers, effects, computer, other electronic communication or data storage devices, cloud storage or media to search by any United States Probation Officer, with the assistance of law enforcement if needed. The search is to be conducted upon reasonable suspicion concerning a violation of a condition of supervision or unlawful conduct by you. Failure to submit to a search may be grounds for revocation of release. You shall warn any other occupants that the premises may be subject to searches pursuant to this condition. Any search shall be conducted at a reasonable time and in a reasonable manner.

It is recommended that you be supervised by your district of residence.

Case 7:21-cr-00463-CS   Document 115   Filed 12/09/22   Page 6 of 7

| Judgment — Page | 6 | of | 7 |

DEFENDANT: David McCrone
CASE NUMBER: 7:21-CR-00463 (CS) (4)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | __Assessment__ | __Restitution__ | __Fine__ | __AVAA Assessment*__ | __JVTA Assessment**__ |
|---|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ | $ | $ | $ |

☐    The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐    The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

     If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| __Name of Payee__ | __Total Loss***__ | __Restitution Ordered__ | __Priority or Percentage__ |
|---|---|---|---|
|  |  |  |  |
| **TOTALS** | $ 0.00 | $ 0.00 |  |

☐    Restitution amount ordered pursuant to plea agreement   $ _____

☐    The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐    The court determined that the defendant does not have the ability to pay interest and it is ordered that:

     ☐   the interest requirement is waived for the   ☐ fine   ☐ restitution.

     ☐   the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

A 87

Judgment — Page ___7___ of ___7___

DEFENDANT:  David McCrone
CASE NUMBER:  7:21-CR-00463 (CS) (4)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**  ☑  Lump sum payment of $ __100.00__ due immediately, balance due

    ☐  not later than _____ , or
    ☐  in accordance with  ☐ C,  ☐ D,  ☐ E, or  ☐ F below; or

**B**  ☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

**C**  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

Case Number
Defendant and Co-Defendant Names
*(including defendant number)*      Total Amount      Joint and Several Amount      Corresponding Payee, if appropriate

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☑  The defendant shall forfeit the defendant's interest in the following property to the United States:
$79,200 in U.S. currency

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

A 88

Criminal Notice of Appeal - Form A

**NOTICE OF APPEAL**

**United States District Court**

Southern _____ District of New York _____

RECEIVED
DEC 1 9 2022
CHAMBERS OF
CATHY SEIBEL
U.S.D.J.

Caption:

United States _____ v.

David McCrone _____

Docket No.: 21 Cr. 463 (CS)

_____
(District Court Judge)

Notice is hereby given that David McCrone _____ appeals to the United States Court of

Appeals for the Second Circuit from the judgment |____|, other |____| _____

entered in this action on 12/5/2022 _____ .                                    (specify)
                                          (date)

This appeal concerns: Conviction only |____|   Sentence only |____|   Conviction & Sentence |_X_|   Other |____|

Defendant found guilty by plea | _X_ | trial | | N/A | .

Offense occurred after November 1, 1987?   Yes | _X_ |   No |____|   N/A |____|

Date of sentence: 12/5/2022 _____   N/A |____|

Bail/Jail Disposition: Committed |_X_|   Not committed |____|   N/A |____|

Appellant is represented by counsel?   Yes _X_ | No |____|   If yes, provide the following information:

Defendant's Counsel:   Jennifer R. Louis-Jeune

Counsel's Address:   52 Duane Street, 7th Floor

New York, NY 10007

Counsel's Phone:   212-203-9058

Assistant U.S. Attorney:   Josiah Pertz

AUSA's Address:   One St. Andrew's Plaza

New York, NY 10007

AUSA's Phone:   914-993-1966

_____
Signature

A 89